**K & K IMPLEMENT, INC., formerly Orval's Implement, Inc., a corporation, Plaintiff and Appellant**

v.

**FIRST NATIONAL BANK, HETTINGER, NORTH DAKOTA; West River State Bank, Hettinger, North Dakota; Ronald Braseth; Douglas D. Morrison and Magnus Meier, Defendants and Appellees.**

Civ. No. 920248.

Supreme Court of North Dakota.

June 16, 1993.

James L. Norris, Bismarck, for plaintiff and appellant.

Bruce H. Carlson of McNair, Larson & Carlson, Ltd., Fargo, for defendants and appellees First Nat. Bank, Ronald Braseth, and Douglas D. Morrison.

Arlen M. Ruff of Kelsch, Kelsch, Ruff & Austin, Mandan, for defendants and appellees West River State Bank and Magnus Meier.

SANDSTROM, Justice.

K & K Implement, Inc., formerly Orval's Implement, Inc. (K & K), has appealed from district court summary judgments dismissing its action against First National Bank, Hettinger, North Dakota (First National); West River State Bank, Hettinger, North Dakota (West River); Ronald Braseth; Douglas D. Morrison; and Magnus Meier. We affirm.

I

The facts stated in this opinion are drawn from the district court's recitations of undisputed facts. In 1983, K & K and Donald Melling entered into retail installment contract/security agreement # 4675. The collateral included two Massey Ferguson combines, four Massey Ferguson headers and two Sund pickups. In 1984, K & K and Melling entered into retail installment contract/security agreement # 6221. The collateral included a Melroe Bobcat, two John Deere row crop headers, two Massey Ferguson 24–foot headers, one Massey Ferguson 30–foot header, and a Massey Ferguson tractor. K & K assigned the contracts and financing statements to First National. Financing statements listing First National as K & K's assignee were filed on July 1, 1983, for contract # 4675, and on June 22, 1984, for contract # 6221.

Melling defaulted on both contracts. First National sued K & K on recourse

obligations included in the assignment. On June 20, 1985, First National obtained a judgment against K & K. On September 23, 1985, First National agreed not to execute on the judgment and K & K agreed to obtain return of the collateral from Melling, sell it, and pay the proceeds to First National. K & K did not do so.

On September 24, 1986, Melling filed a Chapter 11 bankruptcy petition. K & K and First National filed proof of claim forms. Melling sought the bankruptcy court's permission to obtain a loan from West River to pay off First National's security interest in the Melling machinery and equipment. First National agreed to assign its security interest in all of Melling's machinery and equipment to West River. K & K was a debtor of both First National and West River. Melling was a debtor of both First National and West River.

In July 1987, First National agreed to forgive interest of $88,636.83 upon K & K's delivery of a check representing proceeds of a Small Business Administration loan. A satisfaction of First National's judgment against K & K was filed in August. In September, First National assigned to West River the Melling retail installment contracts/security agreements and the related financing statements. Based upon the assignment from First National, West River filed continuation statements on the Melling financing statements, which K & K had not continued.

In October 1987, Melling filed a proposed plan of reorganization providing that the First National claim would be settled, West River would be a secured creditor, and K & K would be an unsecured creditor. K & K objected to the proposed plan. In February 1988, K & K withdrew its objection to the proposed plan of reorganization because it had reached an oral agreement with Melling that K & K would be paid $150,000 from a loan Melling was to obtain from the Farmers Home Administration. The loan was never obtained. In May 1988, Melling filed an amended plan of reorganization treating K & K as an unse-

cured creditor. The amended plan was confirmed by the bankruptcy court.

In 1990, Melling filed a Chapter 12 bankruptcy petition. K & K claimed status as a secured creditor. K & K filed a motion for adequate protection and to determine its secured status, claiming a first secured position in the collateral covered by the two Melling retail installment contracts/security agreements. The bankruptcy court found that K & K's failure to continue the financing statements covering the collateral and the contracts made K & K an unsecured creditor. The bankruptcy court also held that, because K & K was treated as an unsecured creditor under the confirmed Chapter 11 plan, K & K's motion was barred because the confirmed plan was res judicata. On appeal, the bankruptcy court's order was affirmed by the federal district court.

In 1991, K & K sued First National, West River, Braseth, Morrison and Meier for conversion and fraud, alleging in part:

"17. Since September 11, 1987, all of the defendants have wrongfully exercised dominion and control over the two retail installment contracts and security agreements # 4675 and # 6221 which rightfully belong to K & K because K & K fully paid First National any and all debt against these two retail installment contracts and security agreements....

\*   \*   \*   \*   \*   \*

"19. Each defendant was fully aware of, had knowledge of and understood that K & K had fully paid First National on July 20, 1987 for the two retail installment contracts and security agreements # 4675 and # 6221. Each defendant was fully aware of, had knowledge of and understood that the assignment on September 11, 1987 by First National to West River for the two retail installment contracts and security agreements # 4675 and # 6221 was an act of fraud, deceit, malice and oppression by each of the defendants to prevent K & K from having possession of property for which K & K had fully paid."

On March 17, 1992, First National, Braseth and Morrison moved for summary

judgment. On April 14, 1992, West River and Meier moved for summary judgment. The district court granted the motions, concluding that K & K should have presented its claims in prior bankruptcy proceedings and that they were barred by res judicata and collateral estoppel.

A judgment dismissing K & K's action against First National, Braseth, and Morrison was entered on July 6, 1992. A judgment dismissing K & K's action against West River and Meier was entered on July 22, 1992. K & K's notice of appeal states: "Plaintiff K & K Implement, Inc. appeals this court's judgment of dismissal (dated July 6, 1992) to the North Dakota Supreme Court." K & K thereafter requested that we enter an order that its notice of appeal includes all of the defendants or allow it an extension of time to file a notice of appeal against West River and Meier. We temporarily remanded the case to the district court for consideration of an application for late filing of a notice of appeal or an amendment of the notice of appeal.

## II

The district court found that K & K's counsel intended to appeal from both judgments of dismissal and ordered that K & K's proposed amended notice of appeal from both judgments "shall forthwith be filed with the Clerk of this Court nunc pro tunc and effective as of the date of August 20, 1992." West River and Meier contend that the district court erred in granting additional time to appeal against them.

■ Whenever reasonably possible, cases should be disposed of on the merits. *Dehn v. Otter Tail Power Co.*, 248 N.W.2d 851 (N.D.1976). To establish excusable neglect under Rule 4, N.D.R.App.P., a party must "show the trial court that unique or extraordinary circumstances caused it to not file a timely notice of appeal." *Hagert v. Hatton Commodities, Inc.*, 421 N.W.2d 473, 475 (N.D.1988). A trial court's determination on a motion for an extension of time based upon excusable neglect will not be set aside on appeal absent an abuse of discretion.

■ In a memorandum of June 18, 1992, the district court informed the parties that it was granting the motions of all defendants for dismissal. Both of the judgments served upon K & K and its attorney contained the names of all of the defendants in the caption. Both of the notices of entry of judgment served upon K & K and its attorney contained the names of all of the defendants in the caption. K & K's notice of appeal contains the names of all of the defendants in the caption. The trial court found that K & K and its attorney intended to appeal from both judgments, and it is not argued that they intended otherwise. In light of the foregoing, we are unable to conclude that the district court abused its discretion in ordering that K & K's proposed amended notice of appeal from both judgments "be filed with the Clerk of this Court nunc pro tunc and effective as of the date of August 20, 1992."

## III

We now turn to the merits of the district court's conclusion that K & K's action is barred by res judicata or collateral estoppel. We agree that K & K's action is barred by res judicata.

■ "Indefinite continuation of a dispute is a social burden. It consumes time and energy that may be put to other use, not only of the parties but of the community as a whole." *Restatement (Second) of Judgments*, Introduction at 11 (1992). Courts afford finality to the resolution of a dispute through the doctrine of res judicata. *Id.* We recently explained our law of res judicata in *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 383 (N.D.1992):

"Although collateral estoppel is a branch of the broader law of res judicata, the doctrines are not the same. Res judicata, or claim preclusion, is the more sweeping doctrine that prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which was resolved by final judgment in a court of competent jurisdiction. On the other hand, collater-

al estoppel, or issue preclusion, generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit." (Citations omitted.)

The doctrines promote efficiency for the judiciary and the litigants by requiring that disputes be finally resolved and ended. *Id.* "Courts apply the doctrine of *res judicata* to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources." *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). A party who brings some claims into one court without seeking complete relief and brings some related claims in another court, or who presents some issues in one court proceeding and reserves others to raise them in another court, invites wasteful expense and delay. Application of the law of res judicata conserves scarce judicial resources[1] and avoids wasteful expense and delay.

■ K & K contends that its conversion and fraud claims could not have been raised in the bankruptcy proceedings because the bankruptcy court has no jurisdiction to hear such claims. However, those claims are grounded on matters that could have been and should have been raised and decided in the bankruptcy proceedings.

■ In *Sanders,* the plaintiffs' lender liability action was dismissed as res judicata because of a prior bankruptcy proceeding. "To fall within the bankruptcy jurisdiction of a district court, a proceeding need only be 'related to' a case under Title 11." *Sanders* at 482. "A matter is related to a bankruptcy case if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Sanders* at 482. Confirma-

tion of a plan of reorganization is a final judgment in bankruptcy proceedings and may bar both core and non-core proceedings. *Id.*

In *Eubanks v. F.D.I.C.*, 977 F.2d 166 (5th Cir.1992), after Eubanks' Chapter 11 bankruptcy plan was confirmed, he brought a lender liability action against two banks. Eubanks did not disclose the potential lawsuit, address it in his proposed plan, or otherwise bring it to the attention of the bankruptcy court. The district court dismissed as res judicata for failure to bring the claims in the bankruptcy court. The appellate court affirmed after stating:

"It has long been recognized that a bankruptcy court's order confirming a plan of reorganization is given the same effect as a district court's judgment on the merits for claim preclusion purposes. (Citations omitted.) Section 1141(a) of the Bankruptcy Code clearly provides that all parties to a confirmed plan are bound by its terms: ... One commentator has explained the res judicata consequences of § 1141(a) as follows:

"'a plan is binding upon all parties once it is confirmed and all questions which could have been raised pertaining to such plan are res judicata....'

"5 *Collier on Bankruptcy* ¶ 1141.01[1] (15th ed. 1992) ... There is little doubt that the bankruptcy court's confirmation order is binding and final, and we accord it the weight of a final judgment for res judicata purposes."

*Eubanks* at 170–71. A bankruptcy court is a court of competent jurisdiction for res judicata purposes. *Eubanks.*

In *Littlefield v. Union State Bank*, 500 N.W.2d 881 (N.D.1993), we recently held that a lender liability action brought by the plaintiffs, who were shareholders and officers of a bankrupt corporation and who were named creditors in the corporation's bankruptcy proceeding, was barred by the doctrine of res judicata. The corporation

---

**1.** Judicial resources are scarce and becoming more scarce. *See* N.D.C.C. § 27–05–00.1, abolishing county courts on January 1, 1995, and creating district court judgeships on January 2, 1995, equal in number to the number of county judges serving on January 1, 1991, or January 1, 1994, whichever is less, and N.D.C.C. § 27–05–01(2), requiring this court to reduce the number of district judges to forty-two by January 2, 2001.

had filed a Chapter 11 bankruptcy petition, did not disclose as an asset any potential lender liability lawsuits, and did not identify any potential claim against the defendants in its confirmed plan of reorganization.

We observed that "a bankruptcy court's confirmation of a reorganization plan is binding on the debtor and any creditor, and, for purposes of res judicata, confirmation is a valid, final judgment by a court of competent jurisdiction." *Littlefield v. Union State Bank.* At 884. "[R]es judicata applies even though the subsequent claims may be based upon a different legal theory." At 884. "It matters not that the substantive issues were not directly decided in the prior action; the key is that they were 'capable of being, and should have been, raised as part of the [prior] proceeding.' *Hofsommer, supra,* 488 N.W.2d at 385." At 884. We observed that "[i]n the absence of a complete disclosure of the full extent of the debtor's property, a bankruptcy court and creditors cannot make an informed decision about the debtor's proposed reorganization plan." At 885. It is also important for creditors to disclose the full extent of their interests in a debtor's property so that other creditors, the debtor, and the bankruptcy court can make informed decisions about any reorganization plan that the debtor might propose and the need for judicial efficiency is just as great.

 K & K's present conversion claim ("defendants have wrongfully exercised dominion and control over the two retail installment contracts and security agreements # 4675 and # 6221 which rightfully belong to K & K") and its fraud claim ("Each defendant ... understood that the assignment on September 11, 1987 by First National to West River for the two retail installment contracts and security agreements # 4675 and # 6221 was an act of fraud") depend upon who owned the retail installment contracts/security agreements, and the extent of K & K's security interest in the collateral for them. Those matters could have been, and should have been, raised and determined in Melling's initial Chapter 11 bankruptcy proceeding before

his plan of reorganization was confirmed by the bankruptcy court. Those matters were related to the Melling bankruptcy case because they involved interrelated ownership and security questions of the same debtor and creditors and could conceivably have had an effect on the estate being administered. K & K's withdrawal of its objection to Melling's proposed Chapter 11 plan of reorganization, under which K & K was an unsecured creditor, was fatal to its present action. If K & K had not withdrawn its objection, the bankruptcy court or the federal district court "could [have] decide[d] the claim, allowing for a correct adjustment of the relations between all of the parties." *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d at 483. The plan of reorganization confirmed by the bankruptcy court was binding on K & K. K & K's claims in this action are barred by the doctrine of res judicata.

The summary judgments of dismissal are affirmed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.