AMERICANA HEALTHCARE CENTER, Fargo, North Dakota, Plaintiff and Appellant,

v.

NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Defendant and Appellee.

Civ. No. 930244.

Supreme Court of North Dakota.

March 30, 1994.

Carol Ronning Kapsner of Kapsner and Kapsner, Bismarck, for plaintiff and appellant.

Scott K. Porsborg of Fleck, Mather & Strutz, Bismarck, for defendant and appellee.

LEVINE, Justice.

Americana Healthcare Center (Americana) appeals from a judgment of dismissal with prejudice. Because we conclude that Americana's claim for relief against the North Dakota Department of Human Services (DHS) is barred by the doctrine of res judicata, we affirm.

Americana is a long-term care provider which receives reimbursement for care of some of its residents under the Medicaid program. DHS administers the Medicaid program by determining a per diem rate for care of eligible residents and reimbursing the long-term care provider accordingly. DHS applies its ratesetting methods annually to each provider and assigns a new rate to each provider, which applies to the following year.

The dispute at the heart of this case arose out of changes made by DHS in its ratesetting methods in 1985. Before the changes, DHS calculated and paid rates according to each provider's fiscal year. At the end of its fiscal year, a provider estimated its own rate, which was effective until the provider submitted a cost report to DHS. Then, DHS assigned a "desk rate" to the provider, based on its cost report. Finally, DHS audited the provider and issued a "final rate order," which DHS applied retroactively to the provider's previous fiscal year. In 1985, DHS implemented a new ratesetting system which used a set "reporting year" and "rate year," without regard to a provider's fiscal year. During the reporting year, providers submitted their costs to DHS and DHS calculated each provider's desk rate. During the rate year, DHS paid providers according to their assigned desk rates, and it audited providers. The audits resulted in final rate orders, which DHS applied retroactively to the beginning of the rate year.

DHS notified Americana of its new ratesetting methods in 1985. It served final rate orders on Americana for each of the years in question. Americana did not appeal the final rates to DHS, under NDCC §§ 50–24.4–17 and 50–24.4–18.[1] Instead, it brought an ac-

---

1.  NDCC § 50–24.4–17 provides:
    "1. Rate adjustments may be made to correct errors subsequently determined and must also be retroactive to the beginning of the facility's rate year except with respect to rates paid by private-paying residents. Any adjustments that result in a cumulative change of more than twenty-five cents per day from the desk rate will be included in the next subsequent cost report to the extent not corrected by a rate adjustment made pursuant to this subsection.
    "2. Any requests for reconsideration of the rate must be filed with the department's medical services division for administrative consideration within thirty days of the date of the rate notification."
    NDCC § 50–24.4–18 provided, at the time relevant to the final rates in question:
    "1. A nursing home dissatisfied with the final rate established may, upon completion of the reconsideration, appeal. An appeal may be perfected by mailing or delivering the information described in subdivisions a through e of this subsection to the department, at such address as the department may designate, mailed or delivered on or before five p.m. on the thirty-first day after the date of mailing of the determination of the medical services division made with respect to a request for reconsidera-

tion. An appeal under this section is perfected only if accompanied by written documents including the following information:
    a. A copy of the letter received from the medical services division advising of that division's decision on the request for reconsideration;
    b. A statement of each disputed item and the reason or basis for the dispute;
    c. A computation and the dollar amount which reflects the appealing party's claim as to the correct computation and dollar amount for each disputed item;
    d. The authority in statute or rule upon which the appealing party relies for each disputed item; and
    e. The name, address, and telephone number of the person upon whom all notices will be served regarding the appeal.
    "2. Upon request of the nursing home, the department shall refer the appeal to the attorney general for the appointment of a hearing officer, knowledgeable in ratesetting matters, who is not an employee of the department and who has not been involved in the decision from which the nursing home has appealed." NDCC § 50–24.4–18 (1989); see also NDCC § 50–24.4–18 (Supp.1993).

tion in district court for the amount it claims it was under-reimbursed, alleging a breach of contract. The district court granted summary judgment to DHS on the grounds that Americana's claim in district court was barred by the doctrines of collateral estoppel and res judicata, that Americana had failed to exhaust its administrative remedies, and that the statute of limitations had run on Americana's claim.

Americana appealed, arguing that its claim for relief in district court was not barred by collateral estoppel, failure to exhaust its administrative remedies, or the statute of limitations. Because we conclude that the final rate orders in question are res judicata and therefore preclude Americana's action in district court, we do not reach the issue of the applicable statute of limitations, and we discuss the issues of collateral estoppel and exhaustion only in relation to res judicata.

■■■ The doctrine of res judicata gives a valid, existing, and final judgment from a court of competent jurisdiction conclusive effect against the parties and their privies on issues raised or issues that could have been raised and determined in the previous action.[2] E.g., United Hosp. v. D'Annunzio, 466 N.W.2d 595, 598 (N.D.1991); Peacock v. Sundre Township, 372 N.W.2d 877, 878 (N.D. 1985). Res judicata "conserves scarce judicial resources and avoids wasteful expense and delay." Spilovoy v. Spilovoy, 511 N.W.2d 230, 234 n. 3 (N.D.1994) (quoting K & K Implement, Inc. v. First Nat'l Bank, 501 N.W.2d 734, 738 (N.D.1993) (footnote omitted in original)). Administrative res judicata is simply judicial res judicata applied to an administrative decision. Lamplighter v. State ex rel. Heitkamp, 510 N.W.2d 585, 591 (N.D.1994). However, we apply administrative res judicata more circumspectly, taking into account (1) the subject matter decided by the administrative agency, (2) the purpose

of the administrative action, and (3) the reasons for the later proceeding. Hystad v. Mid–Con Exploration Co.–Exeter, 489 N.W.2d 571, 574 (N.D.1992); D'Annunzio, supra at 599. The applicability of res judicata is a question of law. E.g., Hofsommer v. Hofsommer Excavating, Inc., 488 N.W.2d 380, 383 (N.D.1992).

■■■ In considering the first factor, we take into account the technicality and complexity of the subject matter and whether the administrative action involves the agency's expertise. See, e.g., True v. Heitkamp, 470 N.W.2d 582, 587 (N.D.1991) [reiterating general rule that court gives appreciable deference to agency determinations of technical and complex nature]. In applying the second factor, we look at the purpose of the administrative action in order to determine whether the agency action promoted that purpose or was simply an aid to achieving some incidental goal necessary to the performance of the agency's duties and thus, not entitled to res judicata effect "for any other purpose." S.W. v. N.D. Dept. of Human Services, 420 N.W.2d 344, 347 (N.D.1988). With regard to the third factor, the preclusive effect of an administrative decision often depends upon the adequacy of remedies available to contest the administrative decision. Hystad, supra at 574; D'Annunzio, supra at 599.

■■■ The subject matter decided by DHS, ratesetting for long-term care, is within its exclusive jurisdiction. See NDCC § 50–24.4– 02; NDAdminC § 75–02–06–16. It is complex, technical and specialized. See NDAdminC § 75–02–06. The purpose of ratesetting is to administer the Medicaid program, in keeping with DHS's statutory duty "[t]o administer, allocate, and distribute any state and federal funds that may be made available for the purpose of providing financial assis-

---

**2.** Although both parties frame the issue of preclusion of Americana's claim in district court in terms of collateral estoppel, we believe, for the reasons stated in our opinion, that the doctrine of res judicata applies. Collateral estoppel is a branch of the broader doctrine of res judicata. E.g., Hofsommer v. Hofsommer Excavating, Inc., 488 N.W.2d 380, 383 (N.D.1992). Res judicata, or claim preclusion, bars relitigation of claims or issues that were or could have been raised in a

previous action between the same parties or their privies and which resulted in a final judgment by a court of competent jurisdiction. Id. Collateral estoppel, or issue preclusion, bars relitigation of particular issues which were litigated and determined in a previous action. Id. Here, it is Americana's claim for relief in district court, rather than a particular issue that it raises, that is precluded by the final rate orders.

tance, care, and services to eligible persons and families who do not have sufficient income or other resources to provide a reasonable subsistence compatible with decency and health." NDCC § 50–06–05.1(2). The final rate orders fulfilled their central purpose as contemplated by the legislature. *See* NDCC § 50–06–05.1(2).

The "reason[ ] for the later proceeding," Americana's claim for relief in district court, was ostensibly for damages arising from an alleged breach of contract, i.e., the old methods. However, the contract claim was intended to challenge the validity of the final rate orders issued by DHS. Indeed, Americana allowed at oral argument that it would be satisfied were we to remand this case to DHS for recalculation of the final rates in question. An appeal of the final rate orders would have been an adequate legal remedy to that end. *See* NDCC §§ 28–32–15, 50–24.4–17, 50–24.4–18 [governing appeals from agency determinations].

But, Americana contends that the administrative appeals process is an inadequate remedy and that we should not require it to exhaust that remedy. In other words, we should allow a collateral attack on DHS's final rate orders. So many providers were under-reimbursed due to DHS's methods changes, Americana argues, that it would be burdensome to require each of them to have appealed its final rate orders. In support of this argument, Americana cites *Continental Can Co., United States v. Marshall,* 603 F.2d 590 (7th Cir.1979). In that case, the court held that a collateral injunctive action against the Secretary of Labor was the proper procedure for a manufacturer faced with similar citations against several of its eighty plants. The manufacturer had successfully defended two of the citations before an administrative law judge and argued that because the same issues would be involved in each of its plants, it should be allowed to enjoin the Secretary from issuing further citations. The court agreed, holding that collateral estoppel should be applied to dismiss pending cases against the manufacturer and that the manufacturer was not required to exhaust its administrative remedies in each of the pending cases before seeking injunctive relief in district court.

Americana is not faced with the prospect of wasteful relitigation and we do not hear DHS complain about the prospect of multiple appeals. Unlike the manufacturer in *Continental Can,* Americana is not faced with "vexatious and harrassing" duplicative prosecutions if it is confined to an administrative remedy. *Id.* at 597. Furthermore, the Seventh Circuit has cast doubt on its holding in *Continental Can* by its observation that "[r]ecent cases hold that the risk, even the certainty, of multiple litigation does not support immediate appellate review." *R.R. Donnelley & Sons Co. v. FTC,* 931 F.2d 430, 433 (7th Cir.1991). We conclude that the administrative remedy of appeal was an adequate means to contest the adverse ratesetting decision.

Considering the complexity and technical nature of the subject matter, the agency action's fulfillment of its central purpose to set rates and the adequacy of the remedy of an administrative appeal, we hold that the unappealed final rate orders are res judicata and preclude Americana's collateral attack in district court to gain a recalculation of Americana's final rates.

Affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.