1997 ND 223

**Norma CRIDLAND, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,**

**and**

**Hulstrand Construction, Inc., Respondent.**

**Civil No. 970206.**

Supreme Court of North Dakota.

Dec. 2, 1997.

Rehearing Denied Jan. 20, 1998.

Stephen D. Little (argued), of Dietz, Little & Haas, Bismarck, for claimant and appellant.

Lawrence A. Dopson (argued), Special Assistant Attorney General, Bismarck, for appellee.

Gary R. Wolberg (appearance), of Fleck, Mather & Strutz, Bismarck, for respondent.

MARING, Justice.

[¶ 1] Norma Cridland appealed a judgment affirming a workers compensation bureau order apportioning benefits previously paid her and requiring her to repay more than $24,000. Cridland's appeal raises issues about whether a Bureau order awarding her benefits precludes the Bureau from later apportioning those benefits between her work injury and a noncompensable injury. We hold, in the absence of new evidence or a change in medical condition, the Bureau's order awarding Cridland benefits for her work injury, entered with knowledge of the noncompensable injury and after a formal adjudicative hearing, precludes the Bureau from relitigating the effect of the noncompensable injury on her work injury. We reverse and remand with instructions to reinstate Cridland's benefits.

[¶ 2] On September 3, 1993, a truck ran into Cridland during the course of her employment as a highway flagger for Hulstrand Construction, and she filed a claim for workers compensation benefits. Dr. G.D. Ebel described Cridland's injury as a "[m]ild bruised area low mid back" and diagnosed "[l]ow back pain." On September 13, Dr. J.M. McNulty reported that, although Cridland's lower back had improved, she still had some pain. Dr. McNulty diagnosed a lumbar sprain and indicated Cridland would not be able to return to work for at least three weeks. On September 21, Dr. McNulty reported Cridland's pain had diminished and her range of motion had increased.

[¶ 3] On September 26, 1993, Cridland slipped in her bathroom and fractured her right hand. An October 11, 1993 report by Dr. McNulty said Cridland had fallen approximately ten days ago "fracturing her right hand and reinjuring her back" and "had a significant set back from this injury."

[¶ 4] On October 18, 1993, the Bureau issued a notice of informal decision accepting Cridland's claim for her work injury, and the Bureau awarded her related medical and disability benefits. On October 18, the Bureau received an x-ray report, dated September 27, which said Cridland had "slipped in bath-

room" and suffered a probable fracture of her right wrist. On October 22, the Bureau received a medical report, dated September 27, which also said Cridland had "slipped in bathroom." On October 26, the Bureau received Dr. McNulty's October 11 report indicating Cridland had fractured her hand and reinjured her back.

[¶ 5] In November 1993, the Bureau assigned Cridland's claim to a vocational rehabilitation vendor, noting "clmt fell @ Oct 1 in her home (bathroom) fracturing her R hand and reinjuring her back." An initial intake interview in January 1994, by Cridland's rehabilitation consultant reported that "[o]n 9/27/93 according to Ms. Cridland she slipped and fell in her bathroom fracturing her right hand in three places when she hit the wall. She claims that there was no re-injury to her back at that time" and that "[a]ccording to Dr. Hierling, Ms. Cridland's slip and fall accident on September 27, 1993, did not aggravate her lower back condition."

[¶ 6] On January 14, 1994, a Bureau claims analyst wrote Dr. Ebel about whether Cridland's bathroom fall was related to her work injury. Dr. Ebel replied Cridland's bathroom fall was not related to her work injury.

[¶ 7] Meanwhile, on December 6, 1993, the Bureau issued a notice of intent to reduce benefits, advising Cridland her benefits would be cut off if she did not provide the Bureau with further medical information. Cridland failed to respond to the December notice, and the Bureau issued an order denying Cridland further benefits on January 12, 1994. After obtaining medical records from Dr. Hierling, the Bureau issued an order reinstating benefits on March 29, 1994. However, on November 14, 1994, after Cridland failed to provide the Bureau with further medical records, the Bureau issued a notice of intention to discontinue benefits. On December 20, 1994, the Bureau issued an order denying further disability benefits effective December 4, 1994. Cridland requested a rehearing.

[¶ 8] After a formal hearing, hearing officer Mikkelson issued a July 27, 1995 order reversing the Bureau's December 20, 1994 order. Hearing officer Mikkelson's memorandum opinion cited Dr. McNulty's October 11, 1993 report Cridland had fallen and fractured her right hand and reinjured her back; Dr. Charles Wagoner's December 20, 1993 report Cridland suffered from herniation of the L4/5 disc and protrusion of the L5/S1 disc; Dr. Charles Gauntt's March 3, 1994 impression Cridland had a lumbar strain with possible herniated disc and March 14, 1994 report of a disc bulge of L4/5 which is not responsible for her symptoms; Dr. Gail Benson's August 25, 1994 office note Cridland had a herniated disc on the right at L4–5; and Dr. James Ragland's January 4, 1995 recommendation to repeat an MRI to clearly see the disc herniation. Hearing officer Mikkelson concluded Cridland remained disabled as a result of her work injury and was entitled to reasonable medical expenses and disability benefits.

[¶ 9] Neither Cridland, nor the Bureau appealed the July 27, 1995 order. Instead, the Bureau asked Dr. Melissa Ray to perform an independent medical examination of Cridland. Dr. Ray reported a September 1995 MRI revealed a "large herniated disc at L4–5 on the right." Dr. Ray concluded Cridland had suffered only a strain from her work injury and most of her lower back problems were from the bathroom fall. Dr. Ray attributed 25 percent of Cridland's back difficulties to her work injury and 75 percent to her bathroom fall. The Bureau issued an order accepting Dr. Ray's opinion, awarding Cridland benefits on a 25 percent aggravation basis, and requiring her to repay about $24,000 in medical and disability benefits previously paid by the Bureau. Cridland requested a rehearing.

[¶ 10] After a formal hearing, administrative law judge Wahl recommended affirming the Bureau's aggravation and apportionment order, concluding (1) the Bureau had continuing jurisdiction under N.D.C.C. § 65–05–04 to review the award to Cridland, (2) the apportionment issue was not considered by administrative law judge Mikkelson and therefore the doctrine of administrative res judicata did not preclude the Bureau from deciding that issue, and (3) the only evidence about the effect of Cridland's bathroom fall on her lower back condition was Dr. Ray's opinion. The Bureau adopted the recom-

mendation, and the district court affirmed the Bureau's order. Cridland appealed.

[¶ 11] In an appeal from a district court review of a decision by the Bureau, we review the Bureau's decision. *E.g. Fuhrman v. North Dakota Workers Comp. Bur.*, 1997 ND 191, ¶ 6, 569 N.W.2d 269. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions or law, or its decision is not in accordance with the law. *Fuhrman* at ¶ 6. In considering whether the Bureau's findings of fact are supported by a preponderance of the evidence, we decide only whether a reasoning mind reasonably could have determined the Bureau's factual conclusions are supported by the weight of the evidence from the entire record. *Fuhrman* at ¶ 6.

[¶ 12] Here, the dispositive issue involves the preclusive effect of the Bureau's July 27, 1995 order. Cridland contends hearing officer Mikkelson and the Bureau knew about the bathroom fall, and, with that knowledge, awarded her full medical and disability benefits for her work injury. She argues, in the absence of new facts, res judicata precludes the Bureau from relitigating the compensability issue decided by its July 27, 1995 order. She therefore asserts the Bureau's July 27, 1995 order precludes the Bureau from subsequently issuing an order apportioning benefits between her work injury and her bathroom fall. The Bureau responds the effect of Cridland's bathroom fall was not addressed nor decided by the Bureau's July 27, 1995 order, and the Bureau is not precluded from subsequently deciding the effect of that fall.

[¶ 13] The preclusive effect of a prior proceeding on a subsequent action has traditionally been governed by the doctrines of res judicata and collateral estoppel. *See Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 383 (N.D.1992). *See generally* Restatement (Second) of Judgments, Introduction, pp. 1–15 (1982). In *K & K Implement v. First Nat. Bank*, 501 N.W.2d 734, 738 (N.D.1993) (citations and footnote omit-

ted), we explained the rationale for precluding reconsideration of claims or issues under the doctrines of res judicata and collateral estoppel:

> The doctrines promote efficiency for the judiciary and the litigants by requiring that disputes be finally resolved and ended. . . . "Courts apply the doctrine of *res judicata* to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources." . . . A party who brings some claims into one court without seeking complete relief and brings some related claims in another court, or who presents some issues in one court proceeding and reserves others to raise them in another court, invites wasteful expense and delay. Application of the law of res judicata conserves scarce judicial resources and avoids wasteful expense and delay.

[¶ 14] In *Hofsommer*, 488 N.W.2d at 383 (citations omitted), we described the difference between res judicata and collateral estoppel:

> Although collateral estoppel is a branch of the broader law of res judicata, the doctrines are not the same. Res judicata, or claim preclusion, is the more sweeping doctrine that prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which was resolved by final judgment in a court of competent jurisdiction. . . . On the other hand, collateral estoppel, or issue preclusion, generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit.

[¶ 15] Our recent decisions have distinguished collateral estoppel, or issue preclusion, and res judicata, or claim preclusion, in part on the basis of whether an issue was actually litigated in a prior proceeding, or whether the issue was raised or could have been raised in the prior proceeding. *Americana Healthcare Ctr. v. North Dakota Dep't*

*of Human Servs.,* 513 N.W.2d 889, 891, n. 2 (N.D.1994); *K & K Implement,* 501 N.W.2d at 737–38; *Hofsommer,* 488 N.W.2d at 383. *Accord Circle K v. Industrial Com'n,* 179 Ariz. 422, 880 P.2d 642, 645–46 (1993) (explaining that collateral estoppel requires actual litigation of issue in prior proceeding while res judicata does not); *Northern States Power Co. v. Bugher,* 189 Wis.2d 541, 525 N.W.2d 723, 727 (1995) (explaining difference between collateral estoppel and res judicata and adopting issue preclusion and claim preclusion nomenclature).

[¶ 16] Here, the aggravation and apportionment issues for Cridland's work injury and bathroom fall were not actually decided by the Bureau's July 27, 1995 order. Collateral estoppel, which applies to issues actually litigated in prior proceedings, therefore does not apply to these issues.

[¶ 17] Res judicata, however, is broader than collateral estoppel and prohibits relitigation of claims that were raised or could have been raised in a prior proceeding between the same parties or their privies, and which were resolved by a final judgment in a court of competent jurisdiction. *Chapman v. Wells,* 557 N.W.2d 725, 728 (N.D. 1996); *Wetch v. Wetch,* 539 N.W.2d 309, 311 (N.D.1995); *K & K Implement,* 501 N.W.2d at 737–38; *Hofsommer,* 488 N.W.2d at 383. The applicability of the doctrine of res judicata is a question of law. *Hofsommer,* 488 N.W.2d at 383. *See Americana,* 513 N.W.2d at 891.

[¶ 18] Administrative res judicata is the judicial doctrine of res judicata applied to an administrative proceeding. *Fischer v. North Dakota Workers Comp. Bur.,* 530 N.W.2d 344, 347 (N.D.1995); *Americana,* 513 N.W.2d at 891; *Lamplighter Lounge, Inc. v. State ex rel. Heitkamp,* 510 N.W.2d 585, 591 (N.D.1994). *See* Restatement (Second) of Judgments § 83 (1982) ("a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata . . . as a judgment of a court"). We have said we apply administrative res judicata more *circumspectly* than judicial res judicata, taking into account (1) the subject matter decided by the adminis-

trative agency, (2) the purpose of the administrative action, and (3) the reasons for the later proceeding. *Americana,* 513 N.W.2d at 891, citing *Hystad v. Mid–Con Expl. Co. Exeter,* 489 N.W.2d 571, 574 (N.D.1992) and *United Hosp. v. D'Annunzio,* 466 N.W.2d 595, 599 (N.D.1991).

[¶ 19] That circumspection is due in part to the wide range of executive, judicial, and legislative functions performed by administrative agencies. *See* Restatement (Second) of Judgments § 83, comment b (1982). Respected authorities have recognized administrative res judicata more readily applies when an administrative agency decides issues after according the parties the benefit of a trial-type procedure. II Davis and Pierce, Administrative Law Treatise, § 13.3, p. 250 (3rd ed.1994); Restatement (Second) of Judgments § 83 (1982) ("adjudicative determination" accorded res judicata effect). *See Muscatell v. North Dakota Real Estate Com'n,* 546 N.W.2d 374, 379 (N.D.1996) (administrative res judicata contemplates agency action taken in judicial capacity). In *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991), the United States Supreme Court explained:

> "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution. . . . The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an

administrative agency ... which acts in a judicial capacity.

[¶ 20] Here, a formal "trial-type" hearing lead to the Bureau's July 27, 1995 order deciding Cridland's continued entitlement to medical and disability benefits for her work injury. The Bureau's record includes October 1993 references to Cridland's bathroom fall and indicates the Bureau asked Dr. Ebel about that fall in January 1994. Hearing officer Mikkelson's memorandum opinion for the Bureau's July 27, 1995 order unambiguously cited Dr. McNulty's October 11, 1993 office notes indicating Cridland had fractured her right hand and reinjured her back in a recent fall. That memorandum opinion also referred to other 1993 and 1994 medical reports that indicated Cridland had a herniated disc.

[¶ 21] Hearing officer Mikkelson decided Cridland's claim for disability and medical benefits after a trial-type procedure and without apportioning benefits between the work injury and the bathroom fall. Under N.D.C.C. § 65–05–03, the Bureau has authority to decide "all questions within its jurisdiction" and its decisions are final and entitled to the same full faith and credit as a judgment of a court of record. Given the Bureau's knowledge of the bathroom fall and the medical records indicating a herniated disc, the underlying rationale for res judicata is not served by permitting multiple adjudicative proceedings first to decide a claimant's continued entitlement to benefits and then to decide apportionment of those benefits. *See K & K Implement*, 501 N.W.2d at 738. *Compare Berdahl v. North Dakota State Pers. Bd.*, 447 N.W.2d 300, 307 (N.D.1989) (administrative res judicata did not preclude further discipline of state employee where employer did not become aware of some employee misconduct until after first disciplinary proceeding).

[¶ 22] The aggravation and apportionment issues decided in the later proceeding were issues that could have been resolved in the previous formal adjudicative proceeding before hearing officer Mikkelson. *See Lamplighter*, 510 N.W.2d at 590–91 (administrative res judicata precluded attorney general from reconsidering moral character of applicant for liquor license where attorney general had full and fair opportunity to raise issue in prior adjudicative hearing). Permitting litigation of the aggravation and apportionment issues after a formal adjudicative hearing deciding compensability does not promote finality or the "sure and certain relief" envisioned by the workers compensation act. *See* N.D.C.C. § 65–01–01. Under administrative res judicata, the Bureau's July 27, 1995 order would ordinarily preclude the Bureau from apportioning Cridland's benefits between the two occurrences because the aggravation and apportionment issues should have been decided in the formal adjudicative proceeding before hearing officer Mikkelson.

[¶ 23] The Bureau, however, argues N.D.C.C. § 65–05–04 and *Johnson v. North Dakota Workers' Comp. Bur.*, 484 N.W.2d 292 (N.D.1992), permit the Bureau to reconsider the effect of Cridland's bathroom fall and N.D.C.C. § 65–05–29(3) permits the Bureau to recover any payments made to her as a result of an "erroneous adjudication." Although Cridland does not directly respond to *Johnson* or N.D.C.C. § 65–05–29(3), she argues the Bureau's authority to reopen claims must be limited to new facts and N.D.C.C. § 65–05–04 does not give the Bureau unlimited discretion to relitigate final orders.

[¶ 24] The Legislature may modify the doctrine of administrative res judicata. *Astoria*, 501 U.S. at 106–110, 111 S.Ct. at 2169–2170; II Davis and Pierce, at § 13.3, p. 256. *See* Restatement (Second) of Judgments § 83(4) (1982) ("adjudicative determination of an issue by an administrative tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be incompatible with a legislative policy").

[¶ 25] In *Johnson*, the claimant, a self-employed life insurance salesman, injured his back during an early morning aerobics class. The claimant filed for workers compensation benefits, asserting he was prospecting for potential sales when the injury occurred. A Bureau claims analyst accepted the claim and the Bureau paid the claimant over $9,000 in medical and disability benefits. A year later the Bureau dismissed the claim, ruling the

injury did not arise out of and in the course of employment and ordering the claimant to repay the previously paid benefits. The district court affirmed the Bureau's decision the injury was not work related, but concluded the Bureau was estopped from seeking repayment of the previously paid benefits.

[¶ 26] On appeal, we held the Bureau was not estopped from ordering the claimant to repay the previously paid benefits, because the claimant had failed to show an essential element of estoppel, *i.e.*, detrimental reliance. *Johnson*, 484 N.W.2d at 294. We also considered the Bureau's authority to reconsider its prior decision and order repayment of benefits under N.D.C.C. §§ 65–05–04 and 65–05–29(3).[1] We construed N.D.C.C. §§ 65–05–04 and 65–05–29(3)(b) together to give the Bureau authority to review an award, and if the reason for ending or diminishing the award was an "erroneous adjudication," to recoup benefits erroneously paid. *Johnson*, 484 N.W.2d at 295–96.

[¶ 27] Although *Johnson* and N.D.C.C. §§ 65–05–04 and 65–05–29(3)(b) authorize the Bureau to review a prior award of compensation on its own motion, that decision and those statutes are not as broad as the Bureau contends. In *Johnson*, 484 N.W.2d at 293, 296, the Bureau's initial decision was made by a claims analyst in the context of an "informal hearing." Although the claims analyst's initial decision constituted a Bureau adjudication under N.D.C.C. § 65–05–29(3)(b), and was final under N.D.C.C. § 65–05–03, that decision was not made after a formal adjudicative hearing.

[¶ 28] Here, the Bureau's July 27, 1995 order was made with knowledge of Cridland's bathroom fall and after a formal adjudicative hearing. Although the Bureau subsequently ordered an independent medical examination by Dr. Ray, her opinion was not new evidence in the sense that it involved a change in Cridland's medical condition or evidence discoverable only after the July 27, 1995 order. *Compare Lass v. North Dakota Workmen's Comp. Bur.*, 415 N.W.2d 796, 800 (N.D.1987) (Workers Compensation Act did not authorize Bureau to deny future claims based upon change in claimant's medical condition). Rather, Dr. Ray's opinion was based upon records available to the Bureau before the July 27, 1995 order.

[¶ 29] The plain language of N.D.C.C. § 65–05–04, authorizes the Bureau to review an award "at any time" and "in accordance with the facts found on such review" to "end, diminish, or increase the compensation previously awarded." That language, however, does not preclude application of the doctrine of administrative res judicata to Bureau decisions entered after a formal adjudicative hearing. Although the

---

1. Section 65–05–04, N.D.C.C., says:
   *Bureau has continuing jurisdiction over claims properly filed.* If the original claim for compensation has been made within the time specified in section 65–05–01, the bureau at any time, on its own motion or on application, may review the award, and in accordance with the facts found on such review, may end, diminish, or increase the compensation previously awarded, or, if compensation has been refused or discontinued, may award compensation. There is no appeal from a bureau decision not to reopen a claim after the bureau's order on the claim has become final.
   Section 65–05–29(3), N.D.C.C., says, in relevant part:
   *Assignment of claims void—Claims exempt.* Any assignment of a claim for compensation under this title is void. All compensation and claims therefor are exempt from claims of creditors except any of the following:
   *   *   *   *   *   *
   3. A claim by the bureau for any payments made due to:

   a. Clerical error, mistake of identity, innocent misrepresentation by or on behalf of the recipient, or any other circumstance of a similar nature, all not induced by fraud, in which cases the recipient shall repay it or recoupment of any unpaid amount may be made from any future payments due to the recipient on any claim with the bureau;
   b. An adjudication by the bureau or by order of the board or any court, if the final decision is that the payment was made under an erroneous adjudication, in which cases the recipient shall repay it or recoupment of any unpaid amount may be made from any future payments due to the recipient on any claim with the bureau;
   c. Fraud, in which case the recipient shall repay the payment or the unpaid amount of the sum may be recouped from any future payments due to the recipient on any claim with the bureau; or
   d. Overpayment due to application of section 65–05–09.1.

Bureau has some discretionary authority to review previous awards under N.D.C.C. § 65–05–04, that statutory authority does not mean the Bureau can relitigate issues that were or should have been decided in a prior formal adjudicative proceeding. We are not persuaded the Legislature intended to give the Bureau unlimited authority to relitigate issues that should have been raised in a prior formal adjudicative hearing.[2] Rather, *Johnson* and N.D.C.C. §§ 65–05–04 and 65–05–29(3) must be considered in light of the doctrine of administrative res judicata, the importance of finality of agency decisions, and the purpose of the workers compensation law to provide injured workers with "sure and certain relief" to preclude the Bureau, in the absence of new evidence or a change in medical condition, from relitigating claims which were, or should have been decided, in a prior formal adjudicative hearing.

[¶ 30] Here, given the Bureau's knowledge of Cridland's bathroom fall and her medical records identifying a herniated disc, any aggravation and apportionment issues for her work injury should have been decided in the formal adjudicative proceeding before hearing officer Mikkelson. Under these circumstances, we conclude administrative res judicata precludes the Bureau from relitigating the aggravation and apportionment claims.

[¶ 31] We reverse the district court judgment and remand with instructions to remand to the Bureau for reinstatement of Cridland's benefits.

[¶ 32] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

---

2. Our decision is in harmony with familiar finality principles. For example, in child custody and support cases, the Legislature has given courts continuing jurisdiction to modify child custody and support, but we generally require a change in circumstances, *i.e.*, new evidence, before a modification of custody or support is imposed. *See Wetch v. Wetch*, 539 N.W.2d 309, 311–13 (N.D.1995); *Eklund v. Eklund*, 538 N.W.2d 182, 185–86 (N.D.1995).