# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 17

Jesse Keidel,                                                                 Appellant

　　v.

North Dakota Workforce Safety

and Insurance Fund,                                                      Appellee

　　and

Kolling & Kolling, Inc.,                                              Respondent

## No. 20220229

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable William A. Herauf, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Dean J. Haas, Bismarck, ND, for appellant.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, ND, for appellee.

**Crothers, Justice.**

[¶1] Jesse Keidel appeals from a district court judgment affirming an administrative law judge's (ALJ) decision denying Keidel permanent partial impairment (PPI) benefits. Keidel argues administrative res judicata prohibits WSI from litigating whether his permanent impairment can be apportioned to a preexisting condition. The ALJ and district court concluded administrative res judicata does not apply. We affirm.

I

[¶2] In May 1996, Keidel suffered a work-related injury to the meniscus of his left knee. Keidel had surgery in December 1996. The surgeon's notes indicated Keidel "has an arthritic knee, not just a meniscus tear," and may need reconstructive surgery in the future. The surgeon commented in a follow-up visit on January 2, 1997, that Keidel had "a significant degree of osteoarthritis which was a surprise . . . ." In October 1997, Keidel underwent a second surgery to his left knee, a high tibial osteotomy. The preoperative and postoperative surgical notes stated Keidel had medial compartment osteoarthritis in his left knee. The doctor performing an independent medical evaluation in May 1998 opined that Keidel's left knee condition was a "combination of his significant preexisting left knee degenerative joint disease and the work-related permanent aggravation."

[¶3] In June 1999, Keidel received a permanent impairment evaluation for his left knee. The evaluating doctor, Dr. Dilla, used the AMA Guides to the Evaluation of Permanent Impairment, Fourth Edition, for a proximal tibial osteotomy. Dr. Dilla gave Keidel a 15% whole person impairment rating. As part of that rating, the Doctor noted Keidel had a 10% impairment due to medial knee compartment arthritis. Dr. Dilla's report noted Keidel may need another impairment evaluation if he underwent left knee replacement surgery in the future.

[¶4]  Following the permanent impairment evaluation, WSI denied Keidel a PPI award because Keidel's 15% whole body impairment was below the statutory 16% threshold for an impairment award.[1] N.D.C.C. § 65-05-12.2. Keidel appealed the decision and requested a hearing. After a September 2000 hearing, WSI's decision was affirmed by an ALJ. The ALJ concluded Keidel failed to present competent medical evidence rebutting the 15% whole body impairment rating.

[¶5]  In January 2019, Keidel had left total knee replacement surgery. In June 2020, Keidel underwent a second permanent impairment evaluation. The evaluating doctor, Dr. Redington, used the Sixth Edition of the AMA Guides to the Evaluation of Permanent Impairment, and rated Keidel for a left total knee replacement. Dr. Redington determined Keidel had a 24% whole person impairment for the left total knee replacement. Dr. Redington discussed apportionment – whether Keidel's impairment could be attributed to a preexisting condition. After reviewing Keidel's medical records, Dr. Redington stated, "The preponderance of evidence that he probably had some preexisting arthritis, the degree of which cannot be determined, but it was asymptomatic. Unless more information becomes available, I cannot apportion any of the derived impairment to preexisting problems."

[¶6]  WSI requested clarification of Dr. Redington's impairment evaluation. WSI noted Keidel had total replacement of his right knee in approximately 2009, and his "uninjured right knee actually has a worse impairment than that of his injured left knee." In response, Dr. Redington provided,

> "With regard to apportionment, in my first report, I did not really give an opinion as more information was needed. A closer look at the historical documentation indicates to me that there were likely substantial degenerative changes in the knee at the time of the injury. An argument could be made for the majority of the impairment of the left knee to be apportioned to pre-existing conditions. In fact, as you noted, the uninjured right knee had

---

[1] When Keidel had his permanent impairment evaluation in 1999, N.D.C.C. § 65-05-12.2 provided a 16% threshold for an impairment award.

2

essentially the same outcome without a known injury, thus an argument could be made that the left knee replacement would have eventually been necessary in the absence of the work injury, but the work injury likely accelerated the need for the same. Giving [Keidel] the benefit of the doubt, I will apportion 50% of the impairment rating of the left knee to pre-existing conditions."

In November 2020, WSI denied an impairment award for Keidel's left knee because his overall impairment rating after apportionment was 12%, which was below the 14% threshold for an impairment award under the current version of N.D.C.C. § 65-05-12.2.

[¶7] Keidel requested a hearing, which took place in August 2021. In his post-hearing brief, Keidel argued the apportionment of his left knee impairment due to preexisting arthritis was litigated and decided in the 2000 hearing. Keidel claimed Dr. Dilla's 1999 impairment evaluation rated his left knee arthritis at 10%, without apportionment to any preexisting condition. Keidel asserted the surgical reports from his first knee surgery discussing arthritis were available at the time of the September 2000 hearing. Therefore, res judicata barred WSI from litigating whether Keidel's left knee permanent impairment could be apportioned to a preexisting condition.

[¶8] The ALJ upheld WSI's decision denying Keidel PPI benefits. The ALJ concluded administrative res judicata did not apply.

"The issue raised by Keidel regarding apportionment is a legal issue—whether WSI is prevented from apportioning any of the PPI rating to the preexisting condition because Dilla opined that the degenerative arthritis was caused by the first surgical procedure. Based upon the facts and circumstances presented in this case, administrative res judicata does not apply. The current PPI evaluation was done [21] years following the first evaluation and since that time Keidel has had a total knee replacement and manipulation along with significant additional conservative treatment. His current knee condition is not the same as when the first PPI evaluation was completed. The two evaluations did not rate the same condition of the knee. Additionally, the two evaluation[s] rated the knee under different editions of the guides. According to the materials Keidel submitted into the record: Each

3

of the last 3 editions of the *AMA Guides* addresses the concept of apportionment for prior illness, injury, or disease somewhat differently. . . . All the medical records indicate that Keidel had preexisting arthritis in his knee. The issues struggled with by the medical providers in this case was the level of preexisting arthritis and how that arthritis developed after the injury. Further evaluation, imagining and examination could inform the progression of Keidel's knee condition. There was both substantial additional new evidence and a change in the condition of Keidel's knee."

[¶9] The district court affirmed the ALJ's decision. In addressing administrative res judicata, the court stated the ALJ in the 2000 decision "never considered what percentage [of the impairment rating] was for a preexisting condition since Keidel would not have been eligible for benefits regardless of what part of the 15% [rating] resulted from a preexisting condition." The court concluded res judicata did not apply because the ALJ did not consider what percentage of the impairment resulted from a preexisting condition. The court concluded, "Even if Dr. Dilla reported the existence of arthritis, the ALJ did not address the issue of underlining condition since the matter was not pertinent to his decision."

II

[¶10] Keidel argues administrative res judicata bars WSI from litigating the apportionment of permanent impairment to a preexisting condition. Keidel contends Dr. Dilla's 1999 permanent impairment evaluation did not apportion any of the impairment to a preexisting condition. Keidel asserts WSI should have raised the issue of apportionment to a preexisting condition at the September 2000 hearing on whole body impairment.

[¶11] Courts apply only a limited review in appeals from administrative agency decisions under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. *Workforce Safety and Ins. v. Avila*, 2020 ND 90, ¶ 6, 942 N.W.2d 811. On appeal, we review WSI's decision, not the district court's decision. *Id.* Under N.D.C.C. § 28-32-49, we review the agency's decision in the same manner as

the district court reviews an administrative agency order. Questions of law are fully reviewable on appeal. *Avila*, at ¶ 6.

[¶12] Res judicata prohibits relitigation of claims that were raised or could have been raised in an earlier proceeding between the same parties or their privies, and which were resolved by a final judgment in a court of competent jurisdiction. *Cridland v. North Dakota Workers Comp. Bureau*, 1997 ND 223, ¶ 17, 571 N.W.2d 351. Whether res judicata applies is a question of law. *Id.* "We have said we apply administrative res judicata more circumspectly than judicial res judicata, taking into account (1) the subject matter decided by the administrative agency, (2) the purpose of the administrative action, and (3) the reasons for the later proceeding." *Id.* at ¶ 18.

> "In considering the first factor, we take into account the technicality and complexity of the subject matter and whether the administrative action involves the agency's expertise. In applying the second factor, we look at the purpose of the administrative action in order to determine whether the agency action promoted that purpose or was simply an aid to achieving some incidental goal necessary to the performance of the agency's duties and thus, not entitled to res judicata effect 'for any other purpose.' With regard to the third factor, the preclusive effect of an administrative decision often depends upon the adequacy of remedies available to contest the administrative decision."

*Americana Healthcare Ctr. v. North Dakota Dep't of Hum. Servs.*, 513 N.W.2d 889, 891 (N.D. 1994) (cleaned up).

[¶13] "[A]djudicative determination of an issue by an administrative tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be incompatible with a legislative policy." *Cridland,* 1997 ND 223, ¶ 24 (quoting Restatement (Second) of Judgments § 83(4) (1982)).

[¶14] Section 65-05-12.2(3), N.D.C.C., discusses permanent impairment and preexisting conditions:

5

> "An injured employee is entitled to compensation for permanent impairment under this section only for those findings of impairment that are permanent and which were caused by the compensable injury. The organization may not issue an impairment award for impairment findings due to unrelated, noncompensable, or pre-existing conditions, even if these conditions were made symptomatic by the compensable work injury, and regardless of whether section 65-05-15 applies to the claim."

WSI may not issue a permanent impairment award unless specifically identified and quantified under the Sixth Edition of the American Medical Association's "Guides to the Evaluation of Permanent Impairment." N.D.C.C. § 65-05-12.2(8). Under N.D.C.C. § 65-05-04, WSI has continuing jurisdiction over claims filed. "[I]n accordance with the facts found on such review, [WSI] may end, diminish, or increase the compensation previously awarded, or, if compensation has been refused or discontinued, may award compensation." *Id.*

[¶15] Keidel argues this case is analogous to *Cridland v. North Dakota Workers Comp. Bureau,* 1997 ND 223, ¶ 17, 571 N.W.2d 351. In *Cridland*, at ¶ 2, an individual suffered a work injury to her lower back in September 1993. About three weeks later, the individual slipped in the bathroom and broke her right hand. *Id.* at ¶ 3. Medical reports noted both the work injury and bathroom fall. The reports stated the bathroom fall did not aggravate the lower back injury. *Id.* at ¶¶ 5-6. In July 1995, an ALJ order concluded the claimant remained disabled and was entitled to additional medical and disability benefits. *Id.* at ¶ 8. No appeal was taken from that decision. Instead, WSI requested an independent medical examination about two months after the July 1995 order. *Id.* at ¶ 9. The examiner attributed 25% of the claimant's back problems to her work injury and 75% to her bathroom fall. *Id.* WSI issued an order accepting the independent opinion, awarding the claimant benefits on a 25% aggravation basis, and requiring her to repay about $24,000 in medical and disability benefits previously paid by WSI. *Id.* After a hearing, an ALJ affirmed WSI's order, concluding:

> "(1) [WSI] had continuing jurisdiction under N.D.C.C. § 65-05-04 to review the award to Cridland, (2) the apportionment issue was

6

not considered by [the ALJ] and therefore the doctrine of administrative res judicata did not preclude [WSI] from deciding that issue, and (3) the only evidence about the effect of Cridland's bathroom fall on her lower back condition was [the independent] opinion."

*Id*. at ¶ 10.

[¶16] On appeal, the dispositive issue involved the preclusive effect of WSI's July 1995 order. *Cridland*, 1997 ND 223, ¶ 12. The claimant argued res judicata precluded WSI from issuing another order apportioning benefits between her work injury and her bathroom fall in the absence of new facts. *Id*.

[¶17] This Court stated the aggravation and apportionment issues decided in the later proceeding could have been resolved in the earlier formal adjudicative proceeding. *Cridland*, 1997 ND 223, ¶ 22. WSI issued the July 1995 order with knowledge of the bathroom fall and after a formal adjudicative hearing. *Id*. at ¶ 28. We stated the independent medical examination was not new evidence in the sense that it involved a change in the claimant's medical condition or evidence discoverable only after the July 1995 order. *Id*. We concluded administrative res judicata barred WSI from relitigating the aggravation and apportionment claims. *Id*. at ¶ 30. "[G]iven [WSI's] knowledge of Cridland's bathroom fall and her medical records identifying a herniated disc, any aggravation and apportionment issues for her work injury should have been decided in the [earlier] formal adjudicative proceeding[.]" *Id*.

[¶18] Keidel's situation differs from *Cridland*. Unlike *Cridland*, Keidel did not suffer a work injury and a non-work injury within weeks of each other. When Dr. Dilla evaluated Keidel for permanent impairment in 1999, it was known Keidel had arthritis in his left knee. Dr. Dilla did not apportion any of Keidel's arthritis to a preexisting condition. However, as the district court noted, whether Keidel's impairment could be apportioned to a preexisting condition was not considered or decided by the ALJ because Keidel's total impairment fell below the 16% threshold to qualify for an impairment award. In effect, the failure to reach the threshold for an impairment award in the 2000 proceeding rendered the issue of apportionment to a preexisting condition moot.

7

[¶19] Keidel underwent two permanent impairment evaluations approximately 21 years apart. The purpose of the evaluations was to determine whether Keidel's "compensable injury cause[d] permanent impairment." N.D.C.C. § 65-05-12.2. Permanent impairment evaluations involve technical and complex subject matter, and are performed "by a doctor qualified to evaluate the impairment" under the appropriate AMA Guides. N.D.C.C. §§ 65-05-12.2(4) and (8).

[¶20] Each of Keidel's permanent impairment evaluations dealt with a different impairment rating under different editions of the AMA Guides. In the 1999 evaluation, Dr. Dilla rated the impairment for a left knee tibial osteotomy under the Fourth Edition of the AMA Guides. In 2020, Dr. Redington evaluated Keidel for a left total knee replacement using the Sixth Edition of the AMA Guides. After determining a whole person impairment, Dr. Redington considered apportionment to a preexisting condition on the basis of the information available to him. *See* N.D.C.C. § 65-05-12.2(3) (providing WSI may not issue an impairment award for impairment findings due to a preexisting condition).

[¶21] Under N.D.C.C. § 65-05-04, WSI has continuing jurisdiction over claims filed. Given the amount of time and difference between the permanent impairment evaluations under different editions of the AMA Guides, WSI was not precluded from litigating whether Keidel's impairment rating could be apportioned to a preexisting condition. After considering the subject matter, the purpose of the administrative action and the reasons for the later proceeding, administrative res judicata does not apply in this case. *See Cridland*, 1997 ND 223, ¶ 18.

III

[¶22] We have considered the parties' remaining arguments and conclude they are either without merit or not necessary to our decision. The judgment is affirmed.

[¶23] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr