2000 ND 78

**Harold BAIER, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,**

and

**Interstate Brands Corporation, Respondent**

**No. 990310.**

Supreme Court of North Dakota.

April 25, 2000.

Kathryn L. Dietz, Dietz, Little & Haas, Bismarck, N.D., for claimant and appellant.

Brent J. Edison, Special Assistant Attorney General, Bismarck, N.D., for appellee.

NEUMANN, Justice.

[¶ 1] Harold Baier appeals from a district court judgment affirming a Workers Compensation Bureau order denying his reapplication for benefits. Concluding the doctrine of administrative res judicata barred the Bureau from relying upon Baier's termination from employment to deny wage loss benefits, we reverse and remand.

I

[¶ 2] While working for Interstate Brands Corporation ("Interstate") as a dough mixer, Baier suffered work-related injuries to his right shoulder and his back in 1993 and 1995, respectively. The Bureau accepted claims and paid benefits for those injuries. After the second injury, Baier returned to work at Interstate as a sanitation worker in a modified position with restrictions.

[¶ 3] On August 13, 1996, Baier suffered a work-related injury to his left shoulder while lifting a dough-filled pipe. The injury was originally diagnosed as a muscle strain or tear, and Baier was released to return to work on August 19, 1996. Baier filed a claim for benefits with the Bureau on August 21, 1996.

[¶ 4] Baier continued to have pain in the shoulder, and an MRI performed in late September 1996 revealed a torn rotator cuff. Baier's doctor determined surgery was necessary, and advised the Bureau by letter dated October 7, 1996, Baier was to be off work as of October 4, 1996, the last day Baier had worked. Baier ultimately had surgery to repair the shoulder on November 19, 1996.

[¶ 5] Interstate alleged Baier performed work beyond his restrictions on October 4 and was therefore fired for misconduct on that date. The parties dispute whether misconduct occurred and whether Baier was advised on October 4 he was fired. On October 16, 1996, Interstate sent Baier a letter advising him he was terminated effective October 4.

[¶ 6] The Bureau ultimately denied Baier's application for benefits, and Baier requested a formal hearing. The Bureau's specification of issues for the hearing limited the issues to:

1) Whether claimant sustained a compensable work injury;

2) whether claimant performed work duties that exceeded his physical restrictions;

3) whether claimant complied with the requirements regarding an employer's designated medical provider; and

4) whether claimant sustained willfully self-inflicted injury.

[¶ 7] The hearing was held before an administrative law judge ("ALJ") on June 5, 1997. The Bureau introduced evidence, over Baier's objection, about Baier's disciplinary history at Interstate leading to his discharge. Baier's counsel objected to that evidence as irrelevant to the issues which had been raised in the specification of issues, and referred to a separate grievance which had been filed with the union over Baier's firing:

MS. DIETZ: Well, we have no objection to the bureau's exhibits on any foundational basis. I do need to note, though, an objection in terms of B7 through B12 in terms of relevance. B7 through 12 are employer generated materials which reflect apparently safety violations of one sort or another, write-ups, if you will, that the employer apparently put in some sort of file with respect to Mr. Baier.

. . . .

So my position is this is sort of a smoke blowing thing. I understand that there is—there are proceedings between the employer and Mr. Baier, the union is involved, and so on in terms of whether

or not he should have been discharged, I want to make clear that none of that has any place in this proceeding. And to the extent, you know, that that goes on in some, you know, ancillary proceeding, that's fine and good, and surely those matters are relevant in that.

In closing argument, Baier's counsel reiterated the position that "whether or not he should have been let go because of his safety practices" was irrelevant to the issues raised. The Bureau made no attempt to amend the specification of issues or to otherwise reserve the issue of Baier's termination at the hearing.

[¶ 8] The ALJ issued a recommended decision finding in favor of Baier on the issues raised in the specification of issues. The ALJ went on, however, to conclude Baier had been justifiably discharged from employment and he therefore was not entitled to wage loss benefits. Baier's counsel contacted the Bureau and opposing counsel, urging rejection of the findings and conclusions addressing Baier's termination from employment. On September 4, 1997, the Bureau issued its order adopting the ALJ's recommended findings and conclusions on the four specified issues, but rejecting the findings and conclusions addressing Baier's termination because they were "beyond the scope of the issues before the ALJ."

[¶ 9] Although the Bureau's September 4 order specifically found in Baier's favor on the issues which had been specified for hearing, the Bureau did not thereafter pay disability wage loss benefits to Baier. Rather, a Bureau claims analyst advised Baier's counsel the Bureau was now taking the position Baier was not entitled to disability benefits because he could not show loss of earnings due to his termination from employment. When the Bureau continued its refusal to pay benefits, Baier filed a reapplication for benefits. The Bureau denied the reapplication, determining Baier had not sustained loss of earnings due to his injury, and Baier requested a hearing.

[¶ 10] A second hearing was held before the ALJ on May 28, 1998. Baier argued the prior order was res judicata on the issue of Baier's termination because the Bureau could have raised the issue at the prior hearing but did not. The ALJ issued a recommended decision, finding Baier had been terminated for just cause. The ALJ thus concluded that, except for a twelve-week period commencing on the date of his surgery, Baier had failed to demonstrate wage loss attributable to his work injury. The Bureau accepted the ALJ's findings and conclusions that Baier was terminated for cause, but rejected the ALJ's conclusion that Baier was entitled to twelve weeks of disability wage loss benefits for the time immediately following his surgery. The Bureau therefore denied all wage loss benefits for Baier's injury by an order dated February 24, 1998. Baier appealed to the district court, which affirmed the Bureau's order.

## II

[¶ 11] We must initially address the procedural posture of this case. After the Bureau refused to pay benefits despite the original order in Baier's favor, Baier filed a reapplication for benefits. Reapplication is governed by N.D.C.C. § 65–05–08(1):

> When disability benefits are discontinued, the bureau may not begin payment again unless the injured employee files a reapplication for disability benefits on a form supplied by the bureau. In case of reapplication, the award may commence no more than thirty days before the date of reapplication. Disability benefits must be reinstated upon proof by the injured employee that:
>
> a. The employee has sustained a significant change in the compensable medical condition;
>
> b. The employee has sustained an actual wage loss caused by the significant change in the compensable medical condition; and

c. The employee has not retired or voluntarily withdrawn from the job market as defined in section 65–05–09.3.

[¶ 12] By its terms, the statute applies only when a claimant has received disability benefits, those benefits have been discontinued, and the claimant then sustains a significant change in medical condition which causes further wage loss. Under those circumstances, the claimant may reapply to "begin payment again."

[¶ 13] In his brief on appeal, Baier concedes he does not fit under the statute:

In the instant case, Baier never received disability benefits for the claim which had been discontinued; therefore, he did not really have to file a reapplication and prove a significant change in his medical condition as a precondition to eligibility for disability benefits.

Baier nevertheless asserts he was in "administrative limbo," being denied benefits but without an order from which to appeal, and argues he should be allowed to file a reapplication which doesn't fit the statutory requirements.

▮ [¶ 14] Baier cites no authority for this unique assertion. We recognize that Baier was caught in a procedural quagmire, with no adverse order to appeal from but nevertheless being ˙denied disability wage loss benefits. There was, however, an appropriate available remedy. Baier could have sought a writ of mandamus in district court directing the Bureau to pay benefits in accordance with its original September 4, 1997, order. *See Frank v. Traynor,* 1999 ND 183, ¶ 9, 600 N.W.2d 516; *Lende v. North Dakota Workers' Compensation Bureau,* 1997 ND 178, ¶ 25, 568 N.W.2d 755; *Tooley v. Alm,* 515 N.W.2d 137, 139–40 (N.D.1994); *Schiff v. North Dakota Workers Compensation Bureau,* 480 N.W.2d 732, 733 (N.D.1992). Where an appeal is not authorized from the Bureau's adverse decision, mandamus is available if the claimant has a clear legal right to performance of the act and there is no other plain, speedy, and adequate remedy in the ordinary course of law. *Frank,* at ¶ 9; *Tooley,* 515 N.W.2d at 139–40.

[¶ 15] Although we would ordinarily at this point require the claimant to start the process over, seeking the appropriate remedy in the district court, we are concerned in this case with the lengthy delay which has already occurred due to the Bureau's continued refusal to comply with the mandates of administrative res judicata. Baier's injury, surgery, and resulting wage loss occurred in 1996. Now, nearly four years later, he is still seeking wage loss benefits for that injury. We have previously noted the difficulties resulting from lengthy delays in payment of benefits. *See, e.g., Siewert v. North Dakota Workers Compensation Bureau,* 2000 ND 33, ¶¶ 26–27, 606 N.W.2d 501; *Stewart v. North Dakota Workers Compensation Bureau,* 1999 ND 174, ¶¶ 23, 29, 599 N.W.2d 280; *Lende,* 1997 ND 178, ¶¶ 25–27, 568 N.W.2d 755. A claimant's interests are significantly affected by a Bureau procedure which leaves him with no benefits and no meaningful way to challenge the decision. *Siewert,* at ¶ 36; *Stewart,* at ¶ 23.

▮ [¶ 16] We recognize the difficult situation in which Baier was placed. He had prevailed at the formal hearing and an order favorable to him was entered. Rather than paying benefits in accordance with the order, the Bureau instead advised Baier it would not pay benefits based upon an issue which should have been, but was not, raised at the initial formal hearing. Under these circumstances, considering the already lengthy delay and the additional expense and delay of a remand, as well as the fact that the dispositive issue on appeal is one entirely of law, we will treat the appeal to the district court as an application for a writ of mandamus and reach the merits on this appeal. *See, e.g., Olsen v. Koppy,* 1999 ND 87, ¶ 16, 593 N.W.2d 762 (an appeal from an unappealable order may be treated as a request for a supervisory writ); *Mitchell v. Sanborn,* 536

N.W.2d 678, 682–83 (N.D.1995); *City of Fargo v. Casper*, 512 N.W.2d 668, 670 (N.D.1994); *B.H. v. K.D.*, 506 N.W.2d 368, 372–73 (N.D.1993).

## III

[¶ 17] The dispositive issue on appeal is whether res judicata barred the Bureau from relying upon Baier's termination to deny benefits after it failed to timely specify and raise the issue at the first hearing.

[¶ 18] We explained the application of res judicata in an administrative context in *Cridland v. North Dakota Workers Compensation Bureau*, 1997 ND 223, ¶¶ 17–18, 571 N.W.2d 351 (citations omitted):

> Res judicata ... prohibits relitigation of claims that were raised or could have been raised in a prior proceeding between the same parties or their privies, and which were resolved by a final judgment in a court of competent jurisdiction. The applicability of the doctrine of res judicata is a question of law.
>
> Administrative res judicata is the judicial doctrine of res judicata applied to an administrative proceeding. *See* Restatement (Second) of Judgments § 83 (1982) ("a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata ... as a judgment of a court").

As we summarized in *Fuchs v. Moore*, 1999 ND 27, ¶ 6, 589 N.W.2d 902, "[u]nder the doctrine of administrative res judicata an agency order issued after a formal adjudicative proceeding ordinarily bars the agency from later raising issues in new proceedings which could have been resolved in the prior formal adjudicative proceeding that had become final." *See also Saakian v. North Dakota Workers Compensation Bureau*, 1998 ND 227, ¶ 14, 587 N.W.2d 166.

[¶ 19] All of the requisites of administrative res judicata are present in this case. The Bureau issued a final order after a formal hearing before an ALJ. The parties stipulated the failure to show lost earnings because of Baier's discharge was not raised as an issue in the first hearing. At the time of the first hearing, the Bureau was well aware of Baier's discharge and the conduct leading to his termination. In fact, evidence on that issue was presented to the ALJ, and he made recommended findings and conclusions on the issue. The Bureau rejected those findings and conclusions because they were "beyond the scope of the issues before the ALJ." Baier's termination was clearly an issue which could have been raised at the prior hearing but was not.

[¶ 20] The Bureau argues the first hearing was limited to the issue of whether Baier's injury was compensable, and the Bureau was free to later reject the claim on other grounds. That approach has been rejected by our prior cases on administrative res judicata. For example, in *Cridland,* the claimant suffered a work-related back injury. She later reinjured her back in a bathroom fall at home. Following a formal hearing, the Bureau issued an order determining Cridland was disabled by her work-related back injury, without addressing whether the injury had been aggravated by the bathroom fall or whether apportionment of benefits was appropriate. In response to the Bureau's argument the aggravation and apportionment issues could be subsequently relied upon by the Bureau to limit benefits, we held:

> Hearing officer Mikkelson decided Cridland's claim for disability and medical benefits after a trial-type procedure and without apportioning benefits between the work injury and the bathroom fall. Under N.D.C.C. § 65–05–03, the Bureau has authority to decide "all questions within its jurisdiction" and its decisions are final and entitled to the same full faith and credit as a judgment of a court of record. Given the Bureau's knowledge of the bathroom fall and the medical records indicating a herniated

disc, the underlying rationale for res judicata is not served by permitting multiple adjudicative proceedings first to decide a claimant's continued entitlement to benefits and then to decide apportionment of those benefits.

The aggravation and apportionment issues decided in the later proceeding were issues that could have been resolved in the previous formal adjudicative proceeding before hearing officer Mikkelson. Permitting litigation of the aggravation and apportionment issues after a formal adjudicative hearing deciding compensability does not promote finality or the "sure and certain relief" envisioned by the workers compensation act. *See* N.D.C.C. § 65–01–01. Under administrative res judicata, the Bureau's July 27, 1995 order would ordinarily preclude the Bureau from apportioning Cridland's benefits between the two occurrences because the aggravation and apportionment issues should have been decided in the formal adjudicative proceeding before hearing officer Mikkelson.

*Cridland,* 1997 ND 223, ¶¶ 21–22, 571 N.W.2d 351 (citations omitted).

[¶ 21] Similarly, in *McCarty v. North Dakota Workers Compensation Bureau,* 1998 ND 9, 574 N.W.2d 556, we rejected the Bureau's assertion it could deny a claim based upon alleged false statements after it had held a formal hearing on the issue of compensability of the injury. There was no claim the false statements issue arose from newly discovered evidence. Because this was an issue which could have been raised in the prior formal adjudicative hearing, and the Bureau had a full and fair opportunity to present the issue at the hearing, we held the Bureau was barred by res judicata from denying benefits on the basis of the alleged false statements. *McCarty,* at ¶¶ 19–20.

[¶ 22] We have clarified the Bureau's statutory authority to reopen a claim does not preclude application of the doctrine of res judicata:

The plain language of N.D.C.C. § 65–05–04, authorizes the Bureau to review an award "at any time" and "in accordance with the facts found on such review" to "end, diminish, or increase the compensation previously awarded." That language, however, does not preclude application of the doctrine of administrative res judicata to Bureau decisions entered after a formal adjudicative hearing. Although the Bureau has some discretionary authority to review previous awards under N.D.C.C. § 65–05–04, that statutory authority does not mean the Bureau can relitigate issues that were or should have been decided in a prior formal adjudicative proceeding. We are not persuaded the Legislature intended to give the Bureau unlimited authority to relitigate issues that should have been raised in a prior formal adjudicative hearing. Rather, *Johnson [v. North Dakota Workers' Compensation Bureau,* 484 N.W.2d 292 (N.D.1992)] and N.D.C.C. §§ 65–05–04 and 65–05–29(3) must be considered in light of the doctrine of administrative res judicata, the importance of finality of agency decisions, and the purpose of the workers compensation law to provide injured workers with "sure and certain relief" to preclude the Bureau, in the absence of new evidence or a change in medical condition, from relitigating claims which were, or should have been decided, in a prior formal adjudicative hearing.

*Cridland,* 1997 ND 223, ¶ 29, 571 N.W.2d 351 (footnote omitted).

[¶ 23] The Bureau contends it must be given "the flexibility to resolve different issues at different times." The Bureau's argument demonstrates a fundamental misunderstanding of our prior decisions on administrative res judicata. We have repeatedly rejected the Bureau's position that it is entitled to unilaterally decide to bifurcate claims and resolve issues on a piecemeal basis in separate, multiple proceedings. *See McCarty; Cridland.* The Bureau's position flies in the face of the

express purpose of res judicata: to have all disputes finally resolved in a single adjudicative proceeding. As we noted in *Cridland*, 1997 ND 223, ¶ 13, 571 N.W.2d 351 (quoting *K & K Implement v. First Nat'l Bank*, 501 N.W.2d 734, 738 (N.D. 1993)):

> The doctrines promote efficiency for the judiciary and the litigants by requiring that disputes be finally resolved and ended.... "Courts apply the doctrine of *res judicata* to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources.".... A party who brings some claims into one court without seeking complete relief and brings some related claims in another court, or who presents some issues in one court proceeding and reserves others to raise them in another court, invites wasteful expense and delay. Application of the law of res judicata conserves scarce judicial resources and avoids wasteful expense and delay.

The import of our prior cases is clear: When a claimant requests a formal hearing, the Bureau should at that time present all known grounds upon which it intends to rely to deny, limit, or restrict the claim. It would be patently unfair, and a waste of the parties' and the system's time, expense, and resources, to allow the Bureau to proceed in a piecemeal fashion when it had a full and fair opportunity to present the issue at the initial formal hearing.

[¶ 24] Finally, relying upon *Saakian v. North Dakota Workers Compensation Bureau*, 1998 ND 227, 587 N.W.2d 166, the Bureau asserts the issue of Baier's termination was reserved for resolution at a later date. In *Saakian*, at ¶ 14, we said:

> While our case law on administrative res judicata would not foreclose the ALJ and the parties from reserving for future hearing and decision issues not delineated in the specification of issues but which arise during a formal administrative hearing and are tried by implied consent, neither the ALJ nor the parties did so in this case.

There is no showing the parties or the ALJ agreed at the first hearing to reserve the issue for later hearing and decision, nor is there evidence the issue was tried by implied consent. Rather, Baier specifically objected to any evidence pertaining to his discharge on the basis it was beyond the scope of the specified issues. The Bureau did not attempt to amend the specification of issues or seek an agreement to reserve the issue for later hearing and decision. This is not the situation contemplated in *Saakian*.

[¶ 25] Because the Bureau had full knowledge of the matter of Baier's discharge prior to the June 5, 1997, hearing and failed to include it in its specification of issues, we conclude the Bureau was precluded by the doctrine of res judicata from subsequently relying upon Baier's discharge to deny disability wage loss benefits. Our resolution of this issue makes it unnecessary to address the other issues raised by the parties. We reverse the judgment and remand to the district court for entry of a writ of mandamus directing the Bureau to determine the duration of Baier's disability and award wage loss benefits accordingly.

[¶ 26] GERALD W. VANDE WALLE, C.J., MARY MUEHKEN MARING, DALE V. SANDSTROM, JJ., concur.

[¶ 27] The Honorable CAROL RONNING KAPSNER disqualified herself subsequent to oral argument and did not participate in this decision.