2011 ND 108

**Richard LANDRUM, Appellant**

v.

**WORKFORCE SAFETY AND INSURANCE FUND,**
**Appellee.**

**No. 20100374.**

Supreme Court of North Dakota.

June 21, 2011.

Steven L. Latham, Bismarck, ND, for appellant.

Shanon M. Gregor, Fargo, ND, for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Richard Landrum appealed a district court judgment affirming an order of Workforce Safety and Insurance ("WSI") denying further benefits. We affirm, concluding that administrative res judicata did not bar WSI from denying further benefits and that a reasoning mind reasonably could have concluded that Landrum failed to prove his work injury was a substantial, contributing factor to his headaches and vision problems.

I.

[¶ 2] In 1990, while working in New England, Landrum was struck in the nose by a sliding metal meat hook, resulting in a fractured nose and a laceration requiring three stitches, antibiotics, and analgesics. Three days later, Landrum told an ear-nose-throat specialist that before his work injury, he had previously broken his nose, and the specialist determined no further treatment was necessary. WSI awarded Landrum benefits for his injuries.

[¶ 3] Landrum's medical records indicate that the next medical treatment occurred in 1993, when he was suffering from migraine-type headaches in New Jersey. He told his doctor in New Jersey his headaches began about a year and a half earlier and that they had become progressively worse. He informed his doctor about a severe car accident he was involved with in 1985, resulting in a concussion and putting him in a coma for two weeks.

[¶ 4] Landrum moved to Virginia and began treatment for his headaches there in the fall of 1993. He informed his doctor of the 1990 work injury and other injuries. Landrum did not return to this doctor until 1997, when he complained of intense

and chronic headaches. He told the doctor he had back surgery in 1995.

[¶ 5] Landrum received pain management care sporadically until 2001, when he began to see Dr. John Daugherty. Landrum was experiencing pain from headaches, low back and leg problems, and vision problems. Landrum had also received treatment from an ophthalmologist regarding his vision problems.

[¶ 6] In 2002, Dr. Daugherty prescribed Viagra to treat Landrum's sexual dysfunction. WSI questioned the Viagra prescription's connection to the 1990 meat hook work injury, and Dr. Daugherty sent WSI a letter indicating a causal connection between the work injury and Landrum's sexual dysfunction. WSI denied payment for the Viagra, ultimately issuing an order denying benefits for the Viagra. Landrum sought reconsideration of the order and requested a formal hearing, after which an Administrative Law Judge ("ALJ") determined WSI was not liable for the Viagra because Virginia's Workers' Compensation Commission already awarded benefits for the Viagra. WSI issued a final order, adopting the ALJ's decision in 2004. Landrum did not appeal this order.

[¶ 7] Landrum continued care under Dr. Daugherty, other specialists, and an ophthalmologist. WSI continued to pay for his pain medication, including primarily OxyContin and Oxycodone.

[¶ 8] In April of 2009, WSI determined Landrum's vision problems were not causally connected to the 1990 work injury. Accordingly, WSI refused to pay for treatment regarding Landrum's vision problems. Landrum asked WSI to reconsider this denial of benefits. In the meantime, after a review of Landrum's medical records by WSI's independent medical consultant, Dr. Gregory Peterson, WSI also denied benefits concerning Landrum's

headaches. Landrum asked WSI to reconsider this denial as well.

[¶ 9] The ALJ held a formal hearing, where Dr. Peterson testified why Landrum's 1990 work injury was not the cause of his headaches and vision problems. The ALJ kept the hearing open because Landrum was unavailable to testify that day. Landrum eventually provided testimony regarding his medical treatment. Ultimately, the ALJ upheld WSI's decision denying payment for Landrum's treatment for his headaches and vision problems. Landrum appealed to the district court, which affirmed the ALJ's order.

[¶ 10] On appeal to this Court, Landrum argues WSI's 2009 denial of benefits for his headaches and vision problems is barred by administrative res judicata because WSI considered, or should have considered, these benefits during the proceeding in 2004, when WSI refused to pay for Viagra. Landrum also argues WSI's denial of benefits for his headaches and vision problems is not supported by a preponderance of the evidence.

II.

[¶ 11] In the 2009 proceeding, the compensability of Landrum's headaches and vision problems was the subject matter of the proceeding. WSI exercised its continuing jurisdiction under N.D.C.C. § 65–05–04 and denied liability for Landrum's vision problems and headaches. A formal hearing was held before an ALJ, where Dr. Peterson and Landrum testified. Landrum argued administrative res judicata barred WSI's denial of benefits for his vision problems and headaches. The ALJ concluded, however, that administrative res judicata did not bar WSI's denial of benefits because WSI was not attempting to "re-litigate issues that were or should have been decided in a prior formal adjudicative proceeding." The ALJ

ultimately concluded Landrum failed to present objective medical evidence that related his vision problems and headaches to his 1990 work injury.

[¶ 12] The applicability of administrative res judicata is a question of law to be reviewed under the de novo standard of review. *Bjerklie v. WSI*, 2005 ND 178, ¶ 9, 704 N.W.2d 818. The doctrine generally provides that WSI's issuance of a final order after a formal adjudicative hearing bars WSI "from later raising issues in new proceedings which could have been resolved in the prior formal adjudicative proceeding that had become final." *Baier v. Workers Compensation Bureau*, 2000 ND 78, ¶ 18, 609 N.W.2d 722 (citations omitted). The doctrine is applied more "circumspectly" than judicial res judicata, considering "(1) the subject matter decided by the administrative agency, (2) the purpose of the administrative proceeding, and (3) the reasons for the later proceeding." *Ziesch v. WSI*, 2006 ND 99, ¶ 17, 713 N.W.2d 525 (citations omitted).

[¶ 13] Administrative res judicata must be applied in light of N.D.C.C. § 65–05–04, which grants WSI continuing jurisdiction to review an award of benefits, and provides that WSI "at any time, on its own motion or on application, may review the award, and in accordance with the facts found on such review, may end, diminish, or increase the compensation previously awarded." Furthermore, the underlying purpose of administrative res judicata is "to preserve scarce administrative resources and avoid wasteful expense and delay." *Ziesch*, at ¶ 17. Beyond the legal requirements of administrative res judicata, this purpose guides the Court in its application of the doctrine. *See, e.g., id.*

[¶ 14] Relying on *Baier* and *Cridland v. Workers Compensation Bureau*, 1997 ND 223, 571 N.W.2d 351, Landrum now argues the ALJ misapplied administrative res judicata because WSI attempted to relitigate the award of benefits for his headaches and vision problems—issues he contends should have been litigated in the 2004 proceeding concerning payment for Landrum's Viagra. His argument relies on the fact that when WSI denied benefits in 2009, no new evidence was before WSI. Its medical consultant simply reviewed his medical records. The Legislature, however, did not make WSI's continuing jurisdiction contingent on the presence of new medical evidence. *See* N.D.C.C. § 65–05–04; *see also Drayton v. WSI*, 2008 ND 178, ¶ 18, 756 N.W.2d 320 (citing *Houn v. WSI*, 2005 ND 115, ¶ 12, 698 N.W.2d 271) (holding the district court incorrectly found that "WSI must first determine if there is new evidence . . . before it can exercise continuing jurisdiction").

[¶ 15] In *Ziesch*, this Court limited the reach of *Baier* and *Cridland*, explaining that in those cases, WSI, "in effect, held evidentiary ammunition on compensability in reserve, to be brought out if its initial determination denying the claim is reversed." *Ziesch*, at ¶ 19. Here, WSI did not hold evidentiary ammunition regarding the compensability of the headaches and vision problems. In 2002, Landrum's doctor prescribed him Viagra to treat sexual dysfunction. WSI sent the doctor a letter requesting a medical explanation of how the 1990 work injury caused the sexual dysfunction because WSI did not believe this condition was related to the 1990 work injury. Landrum's doctor responded indicating a causal connection between the work injury and Landrum's sexual dysfunction.

[¶ 16] WSI denied benefits for the Viagra, ultimately issuing an order, on August 27, 2002. Landrum sought reconsideration of the order and requested a formal hearing, which occurred in August

2004. At the hearing, WSI challenged payment for the Viagra. It argued the sexual dysfunction was the result of a separate, low-back injury sustained on the job in Virginia. WSI also argued it was statutorily barred from paying for the Viagra because the Virginia Workers' Compensation Commission had accepted liability for the Viagra prescription. Although he was given notice of the hearing, Landrum could not be reached by phone to participate.

[¶ 17] The ALJ determined WSI was not liable for the Viagra because Virginia's Workers' Compensation Commission already awarded benefits for the Viagra. Specifically, the ALJ explained:

> the issue raised in WSI's August 27, 2002, order—whether Mr. Landrum has, or has not shown, "with reasonable medical certainty and objective medical evidence," that the sexual dysfunction for which the medication Viagra was prescribed was causally related to his North Dakota work injury—has been superceded by the Virginia Workers' Compensation Commission's decision.

[¶ 18] Although the ALJ made additional findings and conclusions concerning the causation of the sexual dysfunction, namely a 1994 work injury in Virginia, the dispositive effect of the ALJ's order is clear—N.D.C.C. § 65–05–05 barred the payment of the same benefits awarded by Virginia. This section provides, "If an employee is determined to be eligible for benefits through some other state act, no further compensation shall be allowed under this title and the employee must reimburse the organization for the entire amount of benefits paid." The subject matter of the 2004 proceeding concerned WSI's refusal to pay for Landrum's Viagra—specifically Virginia's acceptance of liability for the Viagra—not the compensability of Landrum's headaches and vision problems. *See Ziesch*, at ¶ 19 (observing

WSI's distinction between entitlement to benefits and the amount and duration of those benefits).

[¶ 19] Further, applying administrative res judicata in this case would not directly advance its policy of preserving scarce administrative resources and avoiding wasteful expense and delay. An award of duplicate benefits was the dispositive issue before the ALJ in 2004, rather than the compensability of Landrum's headaches and vision problems. Requiring WSI, as a matter of course, to perform a blanket review of all earlier awards of benefits to a claimant would not be advantageous to either the agency or to the claimant. The agency's scarce resources would not be preserved, and the claimant would have the burden, at each subsequent proceeding, to prove entitlement to continuing benefits. The ALJ correctly concluded that administrative res judicata did not bar WSI's denial of benefits for Landrum's headaches and vision problems.

### III.

[¶ 20] Landrum argues WSI's denial of benefits for his headaches and vision problems is not supported by a preponderance of the evidence. Landrum bears the burden of proving by a preponderance of the evidence his continuing entitlement to benefits for his headaches and vision problems. *See Froysland v. North Dakota Workers Compensation Bureau*, 432 N.W.2d 883, 887 (N.D.1988). This Court's review of the ALJ's decision is limited; it does not substitute its judgment for that of the agency. *Curran v. WSI*, 2010 ND 227, ¶ 17, 791 N.W.2d 622. Moreover, it is the province of the ALJ to resolve conflicts of evidence and weigh the credibility of witnesses. *Id.* This Court determines only "whether a reasoning mind reasonably could have determined that the factual conclusions reached were

proved by the weight of the evidence from the entire record." *Id.* (quoting *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D.1979)).

[¶ 21] The ALJ received as evidence Landrum's medical records, testimony from WSI's medical consultant, Dr. Peterson, and testimony from Landrum. The ALJ considered the conflicts in the evidence and resolved them in favor of WSI.

[¶ 22] As characterized in the records by Landrum's treating physician, Dr. Daugherty, the most compelling evidence that the 1990 work injury caused the headaches and vision problems was that Landrum did not experience the headaches before the 1990 work injury and that Landrum immediately experienced the headaches after the 1990 work injury. The ALJ weighed this medical opinion against that of WSI's medical consultant, Dr. Peterson, who believed the absence of headaches and vision problems for at least a year and a half after the 1990 work injury indicated the absence of a causal connection. Furthermore, the ALJ did not find Landrum's testimony that he experienced headaches three days after the 1990 work injury credible. The ALJ found this assertion directly conflicted with Landrum's earlier assertion to his physician in New Jersey that he started to experience headaches a year and a half after the 1990 work injury. There are no medical records in the record to suggest Landrum received medical treatment between 1990 and 1993.

[¶ 23] The ALJ also considered the conflict in evidence concerning the severity of the 1990 work injury. Landrum's physician, Dr. Daugherty, characterized Landrum's 1990 injury as "skull fractures/head injury" and "closed head injury." But Dr. Peterson characterized the 1990 injury as a minor injury. The ALJ concluded Dr. Peterson's opinion was more credible because it was consistent with the diagnosis given by the treating physician three days after the 1990 work injury. That physician's notes indicated Landrum noticed swelling around his nose and discoloration in his lower lids; the notes did not, however, indicate Landrum suffered vision problems or headaches. While Landrum testified this physician failed to include the headaches in his report, the ALJ did not find the testimony credible because in 1993, Landrum told his physician in New Jersey his headaches began a year and a half after his 1990 work injury.

[¶ 24] Additionally, Dr. Daugherty, in a letter to WSI, opined the 1990 work injury was the cause of the headaches and vision problems because "one cannot always explain why headaches develop following a head injury. A seemingly less severe head injury can lead to headaches where more serious ones may not." Dr. Peterson determined in his review of the medical records that Landrum's 1985 severe car accident was more likely the cause of the headaches and vision problems because that accident resulted in a "crushed chest, ruptured liver, spleen and bowel and a fracture of the skull." Ultimately, the ALJ found Dr. Peterson's testimony to be credible and concluded Landrum failed to present any objective medical evidence connecting his headaches and vision problems to his 1990 work injury.

[¶ 25] The ALJ resolved the conflicts of evidence in favor of WSI, provided a reasonable basis for its findings, and sufficiently explained the basis for its conclusion. A reasoning mind reasonably could have concluded that Landrum failed to prove his 1990 work injury was a substantial, contributing factor to his headaches and vision problems.

IV.

[¶ 26] The district court judgment affirming WSI's order denying further benefits is affirmed.

[¶ 27] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.