2010 ND 221

MISSOURI BREAKS, LLC, Robert M. Hallmark & Associates, Frank Celeste, William R. Austin, Phoenix Energy, Bobby Lankford and Erskine Williams, Plaintiffs and Appellees

v.

John O. BURNS; Thomas P. Cawley; Terry Moore; Cheryl Moore; John C. Walter, Trustee; Williston Gas Company; Geary Trigleth; William Thomas Trigleth III, as Trustee, on behalf of the Blue Sky Trust; Astro–Chem Lab, Inc.; Total Safety, Inc.; Williston Basin District of Pool Company; Champion Technologies, Inc.; DC

Well Service, Inc.; First National Bank of Williston; and all other persons unknown claiming any estate or interest in or lien or encumbrance upon the property described in the Complaint, Defendants

Thomas R. Cawley, Appellant.

No. 20100124.

Supreme Court of North Dakota.

Nov. 16, 2010.

Rehearing Denied Dec. 23, 2010.

Jon R. Brakke (argued) and Caren Lynn Wanner Stanley (on brief), Fargo, N.D., for plaintiffs and appellees.

Robert S. Rau, Minot, N.D., for appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Thomas P. Cawley appealed from a judgment quieting title to interests in an oil and gas well in Missouri Breaks, LLC, and others, and rejecting Cawley's claims to a working interest in the well and for repayment of loans made to Missouri Breaks' predecessor. We conclude the district court correctly ruled Cawley's claims are barred under the circumstances of this case. We affirm.

I

[¶ 2] This case involves Cawley's claims to a working interest in the Missouri Breaks Unit No. 1 oil and gas well in McKenzie County and for repayment of loans he made to the current owner's predecessor. Comanche Oil Company was the original lessee under the terms of four leases entered into with the owners of the land on which the well is located. In September 1997, Comanche assigned its interests to Athens/Alpha Gas Corporation, whose president was Frank Woodside. In May 1998, Cawley made the first of several loans to Athens/Alpha in the amount of $15,000. Cawley also loaned Athens/Alpha $5,000 in August 1998; $20,000 in March 2002; and $6,000 in July 2002. Cawley claimed he was promised a working interest in the well as collateral for the loans, and when the loans were not repaid he purchased a 5% working interest in the well in 2002.

[¶ 3] Later in 2002, Athens/Alpha filed for Chapter 11 bankruptcy because of its inability to pay its debts. According to Woodside, the bankruptcy filings listed Cawley as a "secured creditor" owed $26,000 and as an owner of a 5% working interest in the well. Cawley had notice of the bankruptcy proceedings but did not

file a proof of claim with the bankruptcy court and did not record his 5% working interest in the well. In May 2005, a reorganization plan was confirmed by the bankruptcy court. Cawley did not object to the reorganization plan. The plan provided for the formation of Missouri Breaks, and transferred Athens/Alpha's 50% working interest in the well to Missouri Breaks. Missouri Breaks began operating the well and was required to pay Athens/Alpha's creditors using the revenue from its portion of the working interest. The reorganization plan defined "Allowed Claim" for purposes of the plan as:

(i) a Claim that has been allowed by this Plan or a Final Order of the Bankruptcy Court or (ii) a Claim timely filed with the Clerk of Court scheduled as liquidated, undisputed and non-contingent by the Debtor in the schedules, lists and statement of financial affairs and executory contracts heretofore filed with the Bankruptcy Court as they may be amended or supplemented (collectively the "schedules"), as to which Claim no objection to the allowance thereof has been interposed within the period of time fixed by the Code or by a final order of the Bankruptcy Court, or as to which Claim either an objection to the Claim or an application to amend the schedules with respect to a scheduled Claim has resulted in the allowance of a Claim, in whole or in part, by a final order of the Bankruptcy Court.

[¶ 4] The reorganization plan described the effect of the transfer of assets to Missouri Breaks:

On the Effective Date, the Property of the Estate and any and all other assets of the Debtor shall be transferred to [Missouri Breaks] free and clear of any and all Claims, Liens, charges, encumbrances and interests, except as otherwise provided in the Plan and [Missouri

Breaks] shall be deemed a purchaser in good faith and be entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code. The Debtor and [Missouri Breaks] will be discharged from any and all claims to the fullest extent allowed under 11 U.S.C. § 1141. The reorganization plan also addressed the preservation and transfer of claims:

On the Effective Date, any and all claims and causes of action of the Debtor shall be preserved and transferred to [Missouri Breaks], including without limitation claims and actions for preferential transfer(s), fraudulent conveyance(s), avoidable post-petition transfers, turnover of estate property, monetary damages, equitable subordination, avoidance of transfers, or other actions at law or equity which may exist in favor of the Debtor against its current management, insiders, including Frank Woodside or any other party and [Missouri Breaks] shall have full standing to pursue such actions on its own behalf as if it were the Debtor, with no adverse affect or diminution on such actions whatsoever resulting from such transfer or from confirmation of this Plan.

The reorganization plan gave the interest holders and Missouri Breaks "the right to review all proofs of Claims filed in this Case and file objections to or motions to subordinate such Claims prior to any deadline established by the Court which objections, to the extent necessary, may be litigated by [Missouri Breaks] after Confirmation of this Plan, except as set forth specifically herein."

[¶ 5] About one year after the reorganization plan was confirmed by the bankruptcy court, Cawley made a motion in the bankruptcy court to determine his claims. Missouri Breaks and other interest holders objected to Cawley's motion. Missouri Breaks argued granting Cawley's motion would delay closure of the bankruptcy case, Cawley's "claims depend solely on state law," and that "grounds exist for both mandatory and discretionary abstention under 28 U.S.C. § 1334(c)(2) and (1)." Missouri Breaks informed the bankruptcy court that the "Objectors will be commencing suit in state court to resolve the claims of Thomas Cawley and others in the Missouri Breaks Unit No. 1 well." The record does not disclose the bankruptcy court's action on Cawley's motion, but the parties apparently reached an agreement on a state court forum for resolution of Cawley's claims. In March 2006, Cawley recorded his 5% working interest in Missouri Breaks' 50% working interest in the well.

[¶ 6] Missouri Breaks filed this state court quiet title action in September 2006 to resolve any competing claims of ownership in the well. Cawley answered and filed a motion for summary judgment claiming that he had a 5% working interest in Missouri Breaks' 50% working interest in the well and that he was owed $26,000 he had loaned Athens/Alpha before the bankruptcy filing. Missouri Breaks filed a cross-motion for summary judgment, which the district court granted. The court concluded that Cawley's claims were barred by res judicata and that his failure to record the 5% working interest before Athens/Alpha filed for bankruptcy voided any interest he may have had in the well. A final judgment was entered resolving all claims in the quiet title action.

II

[¶ 7] Cawley argues the district court erred in rejecting his claims to a 5% working interest in Missouri Breaks' 50% working interest in the well and for repayment of $26,000 in loans to Athens/Alpha plus interest.

[¶ 8] The standard of review for summary judgment is well established:

"Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Lucas v. Riverside Park Condominiums Unit Owners Ass'n*, 2009 ND 217, ¶ 16, 776 N.W.2d 801 (quoting *Barbie v. Minko Constr., Inc.*, 2009 ND 99, ¶ 5, 766 N.W.2d 458).

A

[¶ 9] Cawley argues the district court erred in determining that principles of res judicata barred his claims.

[¶ 10] We explained res judicata in *Hager v. City of Devils Lake*, 2009 ND 180, ¶ 10, 773 N.W.2d 420 (quoting *Riverwood Commercial Park, L.L.C. v. Standard Oil Co., Inc.*, 2007 ND 36, ¶ 13, 729 N.W.2d 101):

Res judicata, or claim preclusion, prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies. Thus, res judicata means a valid, existing final judgment from a court of competent jurisdiction is conclusive with regard to claims raised, or those that could have been raised and determined, as to [the] parties and their privies in all other actions. Res judicata applies even if subsequent claims are based upon a different legal theory.

" 'Under res judicata principles, it is inappropriate to rehash issues which were tried or could have been tried by the court in prior proceedings.' " *Laib v. Laib*, 2010 ND 62, ¶ 10, 780 N.W.2d 660 (quoting *Wetch v. Wetch*, 539 N.W.2d 309, 311 (N.D. 1995)). Res judicata or claim preclusion "bars courts from relitigating claims in order to promote finality of judgments, which increases certainty, avoids multiple litigation, wasteful delay and expense, and ultimately conserves judicial resources." *Lucas v. Porter*, 2008 ND 160, ¶ 16, 755 N.W.2d 88. The applicability of res judicata or collateral estoppel is a question of law, fully reviewable on appeal. *Ungar v. North Dakota State Univ.*, 2006 ND 185, ¶ 10, 721 N.W.2d 16.

[¶ 11] A bankruptcy court is a court of competent jurisdiction for res judicata purposes. *See Chapman v. Wells*, 557 N.W.2d 725, 729 (N.D.1996); *K & K Implement, Inc. v. First Nat'l Bank*, 501 N.W.2d 734, 738 (N.D.1993). "[A] bankruptcy court's confirmation of a reorganization plan is binding on the debtor and any creditor, and, for purposes of res judicata, confirmation is a valid, final judgment by a court of competent jurisdiction." *Littlefield v. Union State Bank*, 500 N.W.2d 881, 884 (N.D.1993). In *K & K Implement, Inc.*, at 739, this Court explained res

judicata in the context of prior bankruptcy proceedings:

> " '[R]es judicata applies even though the subsequent claims may be based upon a different legal theory.' "It matters not that the substantive issues were not directly decided in the prior action; the key is that they were 'capable of being, and should have been, raised as part of the [prior] proceeding.' " We observed that "[i]n the absence of a complete disclosure of the full extent of the debtor's property, a bankruptcy court and creditors cannot make an informed decision about the debtor's proposed reorganization plan." It is also important for creditors to disclose the full extent of their interests in a debtor's property so that other creditors, the debtor, and the bankruptcy court can make informed decisions about any reorganization plan that the debtor might propose and the need for judicial efficiency is just as great."

(Internal citations omitted). Consequently, for purposes of res judicata " '[a] matter is related to a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." ' " *Id.* at 738 (citation omitted); *see also Chapman,* at 729 ("A 'related proceeding' is one in which the 'outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and in any way impacts upon the handling and administration of the estate.' ") (citation omitted).

[¶ 12] The district court applied the elements identified in *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 480 (6th Cir.1992), a decision which was cited with approval by this Court in *Chapman, K & K Implement, Inc.,* and *Littlefield,* to determine whether Cawley's claims were barred by res judicata:

1. A final decision on the merits in the first action by a court of competent jurisdiction;

2. The second action involves the same parties, or their privies, as the first;

3. The second action raises an issue actually litigated or which should have been litigated in the first action;

4. An identity of the causes of action[.]

[¶ 13] We agree with the district court that each element is satisfied in this case. First, the bankruptcy court's order confirming the reorganization plan constituted a final judgment by a court of competent jurisdiction. *See Littlefield,* 500 N.W.2d at 884. Second, this action involves the same parties or their privies, which has been defined to mean "a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Sanders Confectionery Prods.,* 973 F.2d at 481; *see also Ungar,* 2006 ND 185, ¶ 12, 721 N.W.2d 16 (" '[P]rivity exists if a person is so identified in interest with another that he represents the same legal right.' ") (citation omitted). Under the confirmed reorganization plan, Missouri Breaks is the successor in interest to Athens/Alpha, to whom Cawley loaned the funds and from whom he allegedly acquired the working interest.

[¶ 14] Third, the district court determined that Cawley had notice of and participated in the bankruptcy proceedings by asserting his claims there, even though he did not file a proof of claim or object to the bankruptcy court's confirmation of the reorganization plan. Even if Cawley's claims were not actually litigated in the bankruptcy court, those claims could have been and should have been litigated in the bankruptcy proceedings before the reorganization plan was confirmed. *See K & K Implement, Inc.,* 501 N.W.2d at 739 (with-

drawal of objection to proposed plan of reorganization in bankruptcy court was fatal to state court action claiming a security interest in property involved in bankruptcy). Cawley's loans and asserted working interest, along with Athens/Alpha's other debts, were discharged in the bankruptcy proceedings. *See* 11 U.S.C. § 1141(c) ("after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor"). The loans and working interest Cawley seeks to recover in this case would have an effect on the estate being administered in the bankruptcy court by decreasing the assets available to approved creditors. *See K & K Implement, Inc.*, 501 N.W.2d at 739 ("If K & K had not withdrawn its objection, the bankruptcy court or the federal district court 'could [have] decide[d] the claim, allowing for a correct adjustment of the relations between all of the parties.'") (citation omitted).

[¶ 15] Fourth, there is an identity of the causes of action because the bankruptcy court made determinations regarding secured and unsecured creditor claims in confirming the reorganization plan. As the district court observed, "[b]y pursuing his claim in state court, Cawley is attempting to recover the debt of Athens/Alpha that was considered and discharged by the bankruptcy court." Cawley has not shown that either the confirmed plan or final order of the bankruptcy court did not discharge his claims. *See Van Sickle v. Hallmark & Assocs., Inc.*, 2008 ND 12, ¶ 14, 744 N.W.2d 532 (where appellants did not file claim with bankruptcy court, and neither reorganization plan nor final order of the bankruptcy court included their claim, appellants were not entitled to payment under terms of confirmed reorganization plan).

[¶ 16] We conclude that Cawley's claims are barred by res judicata.

### B

[¶ 17] Cawley nevertheless argues the district court erred in ruling that his claimed working interest in the well is void. He contends his working interest is enforceable against Missouri Breaks because it had actual notice during the bankruptcy proceedings of his claimed interest in the well.

[¶ 18] The Bankruptcy Code "vests the trustee with the rights of a bona fide purchaser of real property for value and permits the invalidation of security interests in real property which, although enforceable between the parties, are not properly perfected at the commencement of the case because the creditor has failed to fully comply with applicable state recording laws." *In re Nies*, 183 B.R. 866, 868 (Bankr.D.N.D.1995). "The trustee's status as a hypothetical bona fide purchaser is therefore paramount to the rights of a holder of an unperfected security interest." *Id.*; *see also In re Wegner*, 210 B.R. 799, 801 (Bankr.D.N.D.1997), *aff'd*, 162 F.3d 1166 (8th Cir.1998) (failure of defendant "to cause his first mortgage to be recorded results in its defeat by the Trustee cloaked with the hypothetical status of a bonafide purchaser for value"). Under 11 U.S.C. § 544(a)(3):

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> . . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law

permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

[¶ 19] In 5 *Collier on Bankruptcy* ¶ 544.02[2] (16th ed.2010) (footnotes omitted), the authors explain:

The purpose of the strong arm clause is to cut off unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case. The statutory language, "without regard to any knowledge of the trustee or of any creditor" refers to actual knowledge but not constructive notice. Even the debtor in possession when exercising a trustee's section 544(a) powers is not charged with actual notice received while it was a prepetition debtor.

Consequently, courts have uniformly held that actual knowledge of a creditor's interest in bankruptcy estate property by a trustee or debtor in possession is simply irrelevant in determining whether the interest can be avoided by the trustee in the exercise of the trustee's strong arm powers, regardless of state law on actual notice. *See, e.g., In re Vondall,* 364 B.R. 668, 672 (8th Cir. BAP 2007); *McEvoy v. Ron Watkins, Inc.,* 105 B.R. 362, 364 (N.D.Tex. 1987); *In re Fowler,* 201 B.R. 771, 778 n. 5 (Bankr.E.D.Tenn.1996); *In re Palmer,* 140 B.R. 765, 771 (Bankr.C.D.Cal.1992); *In re Kelly,* 29 B.R. 708, 710 (Bankr.D.Maine 1983). Even if Athens/Alpha or Missouri Breaks had actual knowledge of Cawley's claimed interest in the well, it would not defeat Missouri Breaks' bona fide purchaser status under the federal bankruptcy laws.

▬▬▬▬ [¶ 20] State law comes into play in determining whether a trustee or debtor in possession had constructive notice of a claimed interest in bankruptcy estate property that will defeat bona fide purchaser status under bankruptcy law. *See McEvoy,* 105 B.R. at 365; *In re Fowler,* 201 B.R. at 778 n. 5; *In re Palmer,* 140 B.R. at 771; *see also In re Horob Livestock Inc.,* 382 B.R. 459, 481 (Bankr. D.Mont.2007) ("State law determines whether a trustee's status as a bona fide purchaser will defeat the rights of persons against whom a trustee seeks to assert his or her powers."). "Disclosures in the debtor's schedules and statement of financial affairs cannot constitute constructive notice." 5 *Collier on Bankruptcy* ¶ 544.02[2] (16th ed.2010); *see also In re Deuel,* 361 B.R. 509, 515 (9th Cir. BAP 2006), *aff'd,* 594 F.3d 1073 (9th Cir.2010) (because bankruptcy schedules and other required documents cannot be filed until there is a case in which to file them, these documents cannot provide constructive notice "as of the commencement of the case"). In *In re Flaten,* 50 B.R. 186, 193 (Bankr.D.N.D.1985), the court explained:

While personal knowledge held by a trustee will not affect his status as bona fide purchaser, constructive notice imposed by state law will destroy the bona fide purchaser's priority claim to the property and, as a result, the trustee's avoidance power under section 544(a)(3). Under North Dakota law, a person dealing with real property is charged with notice of properly recorded instruments affecting the title to the property. *Northwestern Mutual Savings and Loan v. Hanson,* 72 N.D. 629, 10 N.W.2d 599, 602 (1943).... A purchaser of real property is also given constructive notice of a competing interest when there is open, notorious, and peaceful possession of real property by one other than the seller. *See Sorenson v. Olson,* 235 N.W.2d 892, 897 (N.D. 1977).

[¶ 21] Under N.D.C.C. § 47–19–41, "[e]very conveyance of real estate not recorded shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof." When Athens/Alpha filed for bankruptcy in 2002, Cawley had not recorded his asserted working interest in the well. With no record interest in the oil and gas leases and no allegation of open or notorious possession of this interest, Cawley has not established that Athens/Alpha or Missouri Breaks had constructive notice of his interest under North Dakota law to defeat Missouri Breaks' bona fide purchaser status under the reorganization plan and 11 U.S.C. § 544(a)(3). *See In re Cascade Oil Co., Inc.,* 65 B.R. 35, 42 (Bankr.D.Kan. 1986) (debtor in possession under its status as bona fide purchaser was entitled to avoid assignments which were unrecorded on the date the petition for relief was filed).

[¶ 22] Cawley also argues Missouri Breaks was untimely in asserting its right to avoid his claim to a working interest in the well because, under 11 U.S.C. § 546, an avoidance claim under 11 U.S.C. § 544(a)(3) must be brought within two years of the commencement of the bankruptcy case. However, even if Cawley is correct in his assertion that the avoidance was untimely, the reorganization plan was confirmed by the bankruptcy court in 2005 and the plan did not include his asserted working interest in the well. Cawley did not object to the reorganization plan or appeal from the bankruptcy court's final order. Res judicata bars challenges to confirmed reorganization plans even when the plans contain provisions contrary to applicable law. *See, e.g., In re North Alabama Anesthesiology Group, P.C.,* 154 B.R. 752, 761 (Bankr.N.D.Ala.1993) (although bankruptcy court is precluded from releasing non-debtor guarantors, release of guarantors was res judicata where no objection was made or appeal taken from bankruptcy court's order confirming reorganization plan); *Wayne H. Coloney Co., Inc. v. United States Dep't of Air Force,* 89 B.R. 924, 934 (Bankr.N.D.Fla.1988) (although debtor cannot sever contract, "where a Chapter 11 plan so provides and a final order confirming the plan is entered by the bankruptcy court, the question of whether or not it is impermissible to assume part of a contract is *res judicata* and cannot thereafter be asserted"); *In re General Coffee Corp.,* 85 B.R. 905, 907 (Bankr.S.D.Fla.1988) (where creditor banks withdrew objection to confirmation of plan and took no appeal from confirmation order, "[a]ny question of this court's authority to enter the confirmation order is now res judicata"); *In re St. Louis Freight Lines, Inc.,* 45 B.R. 546, 552 (Bankr.E.D.Mich.1984) (party in interest "is bound by the terms of the plan when confirmed, even if the plan ultimately provides it with less than that to which it is otherwise legally entitled"). Cawley cannot challenge the timeliness of the avoidance of his claim at this juncture.

[¶ 23] We conclude the district court did not err in ruling Cawley's claim to a working interest in the well is unenforceable.

### C

[¶ 24] Cawley argues his claims should not be subject to res judicata or bankruptcy law because the parties had an agreement to litigate the claims in state court.

[¶ 25] The parties' agreement to litigate Cawley's claims in state court is evidenced by a letter to Cawley's attorney written by Missouri Breaks' attorney, and states in part:

The agreement was that whether Mr. Cawley had a working interest in the Missouri Breaks Unit No. 1 well and/or whether Mr. Cawley was owed an unsecured obligation by Athens/Alpha would be decided in the quiet title action. I never indicated that events in the Athens/Alpha bankruptcy case would not have probative value or legal significance with respect to the State Court's resolution of those questions.

[¶ 26] Res judicata has been part of North Dakota law for well over a century, *see, e.g., Enderlin State Bank v. Jennings,* 4 N.D. 228, 59 N.W. 1058 (1894), and state and federal courts have concurrent jurisdiction in proceedings related to a bankruptcy case. *See Van Sickle,* 2008 ND 12, ¶ 18, 744 N.W.2d 532. Cawley could not have reasonably expected that the parties could litigate his claims as if the Athens/Alpha bankruptcy proceedings had never occurred. We conclude the district court did not err in relying on applicable state and federal law in its decision.

[¶ 27] Cawley did not record his asserted working interest in the well before Athens/Alpha filed for bankruptcy. Cawley had notice of the bankruptcy but did not file proof of his claims with the bankruptcy court, did not object to the reorganization plan which did not include his claims, and did not appeal from the bankruptcy court order confirming the plan. We conclude the district court did not err in determining Cawley's claims are barred under both state and federal law.

III

[¶ 28] We have considered the other issues raised by Cawley and conclude they are without merit or do not affect our decision. The judgment is affirmed.

[¶ 29] DALE V. SANDSTROM, DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., DONOVAN J. FOUGHTY, D.J., concur.

[¶ 30] The Honorable DONOVAN JOHN FOUGHTY, D.J., sitting in place of KAPSNER, J., disqualified.