# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1555

_____

In re: Athens/Alpha Gas Corporation, a Texas Corporation,

*Debtor*,

------------------------------

Thomas P. Cawley,

*Appellant*,

v.

Frank Celeste; Robert M. Hallmark & Associates, Inc.; Missouri Breaks, LLC; William R. Austin; Phoenix Energy; Bobby Lankford; Erskine Williams,

*Appellees*.

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: October 18, 2012
Filed: May 9, 2013

_____

Before RILEY, Chief Judge, COLLOTON and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Thomas Cawley, a creditor of Athens/Alpha Gas Corporation, appeals a decision of the Bankruptcy Appellate Panel affirming the bankruptcy court's denial of his motion to determine claims. Following the bankruptcy court's confirmation of the debtor corporation's reorganization plan in 2005, Cawley litigated his claims in North Dakota state court. The Supreme Court of North Dakota held that Cawley's claims were barred under the doctrine of *res judicata*. The bankruptcy court granted Cawley's subsequent motion to reopen the case, but it agreed with the state court that Cawley's claims were precluded and denied his motion to determine claims. The BAP affirmed the bankruptcy court on a different ground, reasoning that the bankruptcy court lacked subject-matter jurisdiction to consider Cawley's motion under what has come to be known as the *Rooker-Feldman* doctrine. Because we must accord the state court's judgment preclusive effect under 28 U.S.C. § 1738, we affirm the decision of the bankruptcy court on this alternative ground.

I.

Between 1998 and 2002, Cawley made a series of loans to Athens/Alpha Gas Corporation ("Athens/Alpha"). When Athens/Alpha filed a petition for relief under Chapter 11 in 2002, it listed Cawley as a creditor with a secured claim of $26,000. Cawley claims that his loans were secured by a five-percent working interest in one of Athens/Alpha's wells, and that he elected to purchase that interest in 2002 when Athens/Alpha failed to repay him. But Cawley did not record an interest in the well or file a proof of claim with the bankruptcy court before that court confirmed the reorganization plan for Athens/Alpha.

A group of Athens/Alpha creditors ("the Interest Holders") objected to Cawley's classification as a secured creditor and to his application for administrative expenses based on his alleged interest in the well. Cawley did not respond, and the bankruptcy court resolved Cawley's claims in an order dated March 15, 2005: "Any secured claim asserted by Tom Cawley is disallowed in its entirety. The claim of

Tom Cawley shall be allowed only as an unsecured claim, subject to this Court's disposition of [Cawley's] application for administrative expense claim." Before this order, the Interest Holders had filed a reorganization plan that did not account for Cawley's alleged interest in the well. The plan provided for the formation of a successor to Athens/Alpha called "Missouri Breaks," and transferred Athens/Alpha's interest in the well to Missouri Breaks "free and clear of all liens, claims, encumbrances, charges, and interests." *See* 11 U.S.C. § 1141(c). Cawley did not object to the plan, and the bankruptcy court confirmed it on May 5, 2005.

On June 20, 2006, nearly a year after the bankruptcy court had confirmed the reorganization plan, Cawley filed a motion to determine his administrative expense claim, so that his unsecured claim could be paid. The parties then reached an agreement to litigate Cawley's interest in the well in North Dakota state court. The Interest Holders commenced an action to quiet title in the well in state district court, and Cawley withdrew his motion in the bankruptcy court. While the quiet title action was pending, the bankruptcy court issued a final decree closing the Athens/Alpha bankruptcy estate.

The Interest Holders argued in the state district court that Cawley's claimed interest in the well was "without basis" and that he "should be determined to have no right, title, or interest of any nature." Compl. at 5, *Missouri Breaks, LLC v. Burns*, No. 2006-C-104 (N.D. Dist. Ct. Sept. 30, 2008). Cawley filed an answer and counterclaim reiterating his interest and asserting that the Interest Holders' representations in their agreement with Cawley to litigate ownership of the well in state court barred them from objecting to his claim on the basis of *res judicata*. Def.'s Answer & Countercl. at 3, *id.* The court granted the Interest Holders' motion for summary judgment, concluding that "Cawley's claims could have, and should have, been brought during the bankruptcy proceeding," so they were barred by *res judicata* under North Dakota law. *Missouri Breaks, LLC v. Burns*, No. 2006-C-104, slip op. at 14 (N.D. Dist. Ct. Sept. 30, 2008).

The Supreme Court of North Dakota conducted its own *res judicata* analysis and affirmed. *Missouri Breaks, LLC v. Burns*, 791 N.W.2d 33, 38-40 (N.D. 2010). Cawley argued that the litigation agreement between the parties limited the scope of the state court's jurisdiction over the matter. The agreement, he said, provided only for the parties to litigate ownership of the well and did not allow for arguments about *res judicata*. Appellant's Br. at 5-7, *Missouri Breaks, LLC v. Burns*, 791 N.W.2d 33 (N.D. 2010) (No. 20100124). He also argued that matters related to 11 U.S.C. § 544 and other sections of the Bankruptcy Code were outside the subject-matter jurisdiction of the state court because such issues are within the exclusive jurisdiction of the bankruptcy court. *Id.* at 9-11. The North Dakota court disagreed on both points, noting that "[r]es judicata has been part of North Dakota law for well over a century, and state and federal courts have concurrent jurisdiction in proceedings related to a bankruptcy case." *Missouri Breaks*, 791 N.W.2d at 43 (citation omitted). Therefore, said the state court, "Cawley could not have reasonably expected that the parties could litigate his claims as if the Athens/Alpha bankruptcy proceedings had never occurred." *Id*.

After having no success in the North Dakota courts, Cawley moved to reopen the bankruptcy case and to determine his claims in the bankruptcy court. The court granted Cawley's motion to reopen and denied his motion to determine claims. The court noted that the confirmed reorganization plan "did not include Cawley as a working interest owner" in the well, and that Cawley did not appeal the order confirming the plan. The court agreed with the North Dakota courts that Cawley's claims were barred and denied his motion in all respects. Cawley appealed the bankruptcy court's order to the BAP, which affirmed on a different basis. The BAP concluded that the federal bankruptcy court lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine because "Cawley cannot prevail on his motion unless the state courts were wrong." The BAP also determined that Cawley's appeal was not frivolous, and denied the Interest Holders' motion for sanctions against him.

-4-

Cawley appeals the BAP's ruling, contending that the *Rooker-Feldman* doctrine does not apply. He argues further that the doctrine of *res judicata* does not prevent consideration of his claims, because the North Dakota courts lacked subject-matter jurisdiction over property of the bankruptcy estate. The Interest Holders responded to the appeals and moved for sanctions against Cawley, pursuant to Federal Rule of Appellate Procedure 38.

II.

Cawley first contends that the BAP erred in concluding that the *Rooker-Feldman* doctrine bars his claims. In the two decisions for which the doctrine is named, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Court established the narrow proposition that with the exception of habeas corpus proceedings, the inferior federal courts lack subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This conclusion follows from 28 U.S.C. § 1257, which grants to the Supreme Court exclusive jurisdiction over appeals from state-court judgments.

We are mindful that the Supreme Court in *Exxon Mobil* observed that the lower courts sometimes have applied the *Rooker-Feldman* doctrine too broadly, "superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." *Id.* at 283. At the same time, however, the scope of the *Rooker-Feldman* doctrine, even as narrowly described in *Exxon Mobil*, is sometimes fuzzy on the margins. How may a court of appeals proceed if a *Rooker-Feldman* issue is difficult, but a plaintiff's claim is straightforwardly barred by preclusion law under § 1738 if the federal court has jurisdiction? We have noted before an apparent conflict in authority about whether federal courts must address *Rooker-Feldman* at the threshold,

although many of the decisions on the question are unpublished and include little explanation.  *See Edwards v. City of Jonesboro*, 645 F.3d 1014, 1017-18 (8th Cir. 2011) (collecting authority).

Federal courts generally must address *Article III* subject-matter jurisdiction before reaching a non-jurisdictional question such as *res judicata*.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-97 (1998).  This rule prevents courts from resolving "generalized grievances" and venturing into "vast, uncharted realms of judicial opinion giving."  *Id.* at 97 n.2 (internal quotation marks omitted).  But *Rooker-Feldman* is a rule of *statutory* jurisdiction, not Article III, so *Steel Co.* does not directly apply.

*Steel Co.* acknowledged that a federal court may reach a merits question before deciding a statutory *standing* question, *id.* at 96-97 & n.2, because the merits inquiry and the statutory standing inquiry often overlap, and it would be artificial to draw a distinction between the two.  *Id.* at 97 n.2.  That rationale may not support bypassing *all* questions of statutory jurisdiction.  But we think it does allow a federal court to decide a question of preclusion without first resolving a murky problem under *Rooker-Feldman*, because our inquiries under preclusion law and the *Rooker-Feldman* doctrine would similarly overlap.  Even after *Exxon Mobil*, this court, for better or worse, *see Dodson v. Univ. of Ark. for Med. Scis.*, 601 F.3d 750, 756-60 (8th Cir. 2010) (Melloy, J., concurring), has held that *Rooker-Feldman* forecloses federal jurisdiction when a decision in favor of a federal plaintiff would "wholly undermine" the state court's ruling.  *Id.* at 755 (majority opinion).  The process of determining what claims were before the state court, what the state court ruled, and whether a ruling in federal court would "wholly undermine" the state court's ruling overlaps significantly with the analysis required to determine whether a claim is precluded under § 1738.  We therefore agree with the courts that have deemed it permissible to bypass *Rooker-Feldman* to reach a preclusion question that disposes of a case.  *See Yancey v. Thomas*, 441 F. App'x 552, 555 n.1 (10th Cir. 2011); *Laychock v. Wells*

*Fargo Home Mortg.*, 399 F. App'x 716, 718-19 (3d Cir. 2010); *Torromeo v. Town of Fremont*, 438 F.3d 113, 115 (1st Cir. 2006); *Quadrozzi Concrete Corp. v. City of New York*, 149 F. App'x 17, 18 (2d Cir. 2005); *Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 634 n.5 (7th Cir. 2004).

III.

A.

Whether the North Dakota judgment bars Cawley's claims is controlled by the full faith and credit statute, 28 U.S.C. § 1738. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). The preclusive effect of the state court's final judgment thus depends on North Dakota's preclusion law. North Dakota long has defined *res judicata* as a "doctrine that prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which was resolved by final judgment in a court of competent jurisdiction." *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 383 (N.D. 1992). In the Interest Holders' quiet title action, the Supreme Court of North Dakota adopted the four-element articulation of this standard from *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 (6th Cir. 1992), stating that for *res judicata* to apply, there must be (1) "[a] final decision on the merits in the first action by a court of competent jurisdiction," (2) "the same parties, or their privies," in the second action as in the first, (3) an issue in the second action that was "actually litigated" or that "should have been litigated in the first action," and (4) "[a]n identity of the causes of action." *Missouri Breaks*, 791 N.W.2d at 39.

-7-

Cawley disputes the first element. He contends that the state-court judgment does not have preclusive effect, because 28 U.S.C. § 1334(e) grants federal district courts exclusive jurisdiction over "property of the estate." He argues that the state court lacked subject-matter jurisdiction, so its judgment was void *ab initio* and cannot preclude his claims in the bankruptcy court. But our inquiry into the North Dakota courts' subject-matter jurisdiction is not so far-reaching as Cawley suggests. "[A] judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke*, 375 U.S. 106, 111 (1963).

The rule of *Durfee* provides that we must credit the state court's decision on jurisdiction if the question of subject-matter jurisdiction was "fully and fairly litigated" and "finally decided" in the state court. *Id.* Those standards are met if the parties presented legal arguments and supporting evidence in the rendering court and that court ruled on the question. *See Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) (holding that "[a]fter a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined"); *Davis v. Davis*, 305 U.S. 32, 40-43 (1938) (holding that a jurisdictional question had been fully litigated in state court where the petitioner seeking an absolute divorce decree had "frankly presented to the Virginia court the grounds on which he sought release" and the respondent had "appeared . . . and raised and tried the question whether [the petitioner] had standing to sue").

Our examination of the state-court record and opinion reveals that subject-matter jurisdiction was fully and fairly litigated in the North Dakota courts, and that the Supreme Court of North Dakota finally decided that it had jurisdiction. Cawley maintained before the state district court that the Bankruptcy Code and the agreement of the parties to litigate in state court limited the jurisdiction of the state courts.

Def.'s Answer & Countercl. at 3, *Missouri Breaks, LLC v. Burns*, No. 2006-C-104 (N.D. Dist. Ct. Sept. 30, 2008).  The state district court determined that Missouri Breaks was a "good faith purchaser" under the reorganization plan, and that Cawley's claimed working interest was thus unenforceable against Missouri Breaks.  *Missouri Breaks, LLC v. Burns*, No. 2006-C-104, slip op. at 14-16 (N.D. Dist. Ct. Sept. 30, 2008).  In so doing, the court referred to 11 U.S.C. § 544(a)(3) and the strong-arm power it confers on trustees and debtors-in-possession (through 11 U.S.C. § 1107(a)). *Id.* at 14-15.  In the Supreme Court of North Dakota, Cawley disputed that "11 U.S.C. [§] 544 somehow governs and should be applied in this quiet title action," because "[c]laims and issues dealing with § 544 are 'Core Proceeding' issues" within the exclusive jurisdiction of the federal bankruptcy courts.  Appellant Br. at 9, *Missouri Breaks, LLC v. Burns*, 791 N.W.2d 33 (N.D. 2010) (No. 20100124).  Indeed, Cawley acknowledged at oral argument before this court that the jurisdictional question had been litigated in the state courts, noting that he had "argued at the state trial court level and the state supreme court" that the state courts "had no power over the matter once § 544 was implicated."

The Supreme Court of North Dakota disagreed with Cawley's jurisdictional argument, explaining that "state and federal courts have concurrent jurisdiction in proceedings related to a bankruptcy case."  *Missouri Breaks*, 791 N.W.2d at 43 (internal citation omitted).  The federal courts have exclusive jurisdiction over "all cases under title 11" pursuant to 28 U.S.C. § 1334(a), but § 1334(b) confers on the federal courts "original *but not exclusive* jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11."  28 U.S.C. § 1334(b) (emphases added).  The state court's conclusion that the quiet title action was a "proceeding[] related to a bankruptcy case," and thus within the ambit of § 1334(b), constitutes a final judgment on subject-matter jurisdiction.

We are thus satisfied that the Supreme Court of North Dakota finally decided after full and fair litigation that it had jurisdiction and issued a final decision on the

merits. The first element of North Dakota's *res judicata* standard is met. If the remaining three elements are satisfied, then we must give the state-court judgment the same preclusive effect as it would be given under North Dakota law. *See Migra*, 465 U.S. at 81. We next consider whether the two actions involved the same parties or their privies, whether the issue raised in the second action was litigated or should have been litigated in the first, and whether there was an identity of the causes of action.

An identity of parties exists if either the same parties or their privies appear in both actions. *Missouri Breaks*, 791 N.W.2d at 39. "Privity exists if a person is so identified in interest with another that he represents the same legal right." *Simpson v. Chicago Pneumatic Tool Co.*, 693 N.W.2d 612, 616 (N.D. 2005) (internal quotation omitted). Missouri Breaks was a party to the state-court action, and Cawley named "Athens/Alpha Gas Corporation" in his motion to determine claims in the bankruptcy court. Under the reorganization plan, Missouri Breaks became Athens/Alpha's successor in interest: the plan transferred "ownership and title of any and all assets or property of the estate of [Athens/Alpha]" to Missouri Breaks "free and clear of all liens, claims, encumbrances, charges, and interests." Because Cawley was a party in both actions and Missouri Breaks is Athens/Alpha's privy, the requisite identity of parties between the state and federal actions exists.

The issue raised with the bankruptcy court was actually litigated in the North Dakota proceeding. In state court, Cawley sought "a 5% working interest in the property and well along with past due income" and "in the alternative . . . [to] recoup with interest his capital investment in the sum of $26,000." Def.'s Answer & Countercl. at 6, *Missouri Breaks, LLC v. Burns*, No. 2006-C-104 (N.D. Dist. Ct. Sept. 30, 2008). In his motion to determine claims in the federal bankruptcy court, Cawley "moved the Court for payment of his allowed [claim] in the sum of $26,000 with interest thereon" and sought "an Order of the Court allowing him to recover for and on account of his claim for a Working Interest." Whether Cawley was entitled to

payment on his claim and whether he held and could recover for a working interest in the well were thus both "actually litigated . . . in the first action" and raised in the bankruptcy court. *Missouri Breaks*, 791 N.W.2d at 39.

Finally, there was an identity of causes of action in the two proceedings, because there was an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Sanders Confectionery*, 973 F.2d at 484 (internal quotation omitted). In both cases, the central facts and necessary evidence concern Cawley's alleged loans and working interest in the well.

Because the judgment of the Supreme Court of North Dakota that Cawley's claims were barred satisfies the elements of North Dakota's *res judicata* doctrine, the full faith and credit statute requires us to accord that decision the same preclusive effect as it would be given under North Dakota law. We therefore conclude that Cawley's claims in this action are barred by *res judicata*.

\*      \*      \*

For the foregoing reasons, the order of the bankruptcy court is affirmed. We conclude that the appeal was not frivolous, and the Interest Holders' motion for sanctions is therefore denied.

_____